

**Volume:** 3    **Number:** 179_law    February 5, 2003

**OTHER LEGAL NEWS**

# 'Patricide' author sues Sheppard Pratt

By PETER GEIER
Daily Record Legal Affairs Writer

Printer Friendly Format

A Baltimore man whose unpublished manuscript describes how he got away with murdering his father has filed a $1.5 million lawsuit against his former lawyers and Sheppard Pratt Health Systems Inc. over their alleged improper disclosure of his sealed juvenile records.

William C. Bond accuses Sheppard Pratt, where he was committed as part of his juvenile plea of delinquent to the patricide charge, of the unauthorized release of his mental health records as well as of police and court records in its possession relating to the charge.

His complaint, filed yesterday in Baltimore City Circuit Court, also claims that Gerald A. Messerman of Cleveland, who handled his juvenile case, was professionally negligent by assuring Bond that his Geauga County, Ohio record had been expunged when it had not been.

In addition, Bond claims that Baltimore lawyer Robert N. Grossbart, who represented him in an "estates and trust matter," violated attorney-client privilege when he passed on "confidential and privileged information" about Bond to a private investigator.

Representatives from Sheppard Pratt did not return calls for comment. Grossbart declined to comment on the matter and Messerman was not available for comment yesterday.

Bond seeks $750,000 in compensatory damages and $1 million in punitive damages in a 12-count action for, among other things, breach of fiduciary duty, constructive fraud and legal malpractice. He also accuses Sheppard

Pratt and Grossbart of giving unreasonable publicity to his private life.

### *Getaway book*

The lawsuit stems from Bond's arrest by the Geauga County Sheriff's Department in June 1981 for allegedly causing his father's death.

Bond was charged and prosecuted in the Geauga County Court of Common Pleas Juvenile Division, which accepted his plea of delinquent in August 1981.

His commitment to the Ohio Youth Commission was suspended pending a 60-day evaluation at Sheppard Pratt, where Bond was admitted the following month. He was later placed on probation in Sheppard Pratt's care.

The court terminated Bond's probation when he turned 21 in February 1985. He was notified subsequently that he could request expungement of his record in two years, the complaint says.

He claims it was incumbent upon Messerman "to take the necessary steps to obtain the expungement of the juvenile case without a reminder" from him and that Messerman promised to do so.

Several years later, Bond wrote "Self-portrait of a Patricide: How I Got Away With Murder" — which his complaint describes as "a highly embellished and fictionalized account of the events surrounding his father's death, his prosecution by the state of Ohio and his time at [Sheppard Pratt]."

However, before marketing the manuscript, Bond claims he was advised to protect "the confidentiality and privilege of his juvenile and mental health records to avoid any potential plagiarism or independent investigation of the events" described.

Messerman allegedly assured Bond by June 1994 that his record had been expunged. Between 1993 and 2001, Bond had applied and was "not disapproved" by the Maryland State Police to purchase a variety of handguns from Baltimore area gun dealers.

However, Dudley F. B. Hodgson, a private investigator allegedly learned of Bond's past from Grossbart, who had done legal work for Bond in the late 1980s. Hodgson allegedly passed this information on to the state police, who began their own investigation.

Law enforcement interest in Bond led to subpoenas for his

juvenile records from Geauga County and Sheppard Pratt. He was arrested, his house was searched and he was charged with handgun violations in both Baltimore City and Howard County.

The charges later were dismissed in Baltimore City and stetted in Howard County on condition that he surrender the seven handguns seized and not possess firearms of any kind over the three-year stet period.

### *Custody and copyright*

However, a part of the story not told in the instant complaint can be found in a case Bond lost on summary judgment in Baltimore's federal court.

In that case, affirmed by a 4th U.S. Circuit Court of Appeals decision last week, the district court held that the introduction of Bond's autobiography in a child custody proceeding falls under the fair use provision of copyright law.

Hodgson was retained by Kenneth Blum Sr., the father of Alyson Slavin, a woman Bond planned to marry, to look into Bond's past after Bond sent a letter to Blum demanding money and making reference to his violent history.

Hodgson found out about the murder and managed to obtain a manuscript of Bond's book.

After Bond and Alyson Slavin were married in May 2001, lawyers for Slavin's ex-husband introduced the manuscript during deposition in a custody matter to show that Bond was not a suitable parent for his children.

Bond registered a copy of his manuscript with the copyright office to prevent anyone from introducing it as evidence in court. Immediately thereafter, he sued William Slavin, his attorneys, Hodgson, Blum and Blum's son, to whom the court granted summary judgment.



Copyright © 2003 The Daily Record. All Rights Reserved.

e(getAdCodeLayers()) //-->