## IN THE CIRCUIT COURT FOR BALTIMORE CITY

William C. Bond                          *
4214 Greenway
Baltimore, Maryland 21218                *

    Plaintiff                            *

v.                                       *

Gerald A. Messerman, Esquire             *    Case No. 24-C-03-000690
Messerman & Messerman Co., L.P.A.
Key Tower                                *
127 Public Square
Suite 4100                               *
Cleveland, Ohio 44114-1312
                                         *
    Defendant
                                         *
and
                                         *
Sheppard Pratt Health Systems, Inc.
6501 North Charles Street                *
Baltimore, Maryland 21204-6819
                                         *
    Serve On:
    Resident Agent:                      *
        Patricia A. Pinkerton
        6501 N. Charles Street   *
        Baltimore, Maryland
            21204           *

    Defendant                            *

and                                      *

Robert N. Grossbart, Esquire             *
1 North Charles Street
Suite 1214                               *
Baltimore, Maryland 21201-3740
                                         *
    Defendant

    *    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT AND DEMAND FOR JURY TRIAL

    The Plaintiff William C. Bond (hereinafter    Plaintiff Bond  )

sues the Defendant Gerald A. Messerman, Esquire (hereinafter

Defendant Messerman  ), Defendant Sheppard Pratt Health Systems, Inc. (hereinafter   Defendant Sheppard Pratt  ), and Defendant Robert N. Grossbart, Esquire (hereinafter   Defendant Grossbart  ) and states:

## **PARTIES**

1.    The Plaintiff Bond is a resident of Baltimore City, Maryland.

2.    The Defendant Messerman is a licensed attorney, who resides and maintains his principal place of business in Cleveland, Ohio.

3.    Upon information and belief, at all times relevant to this Complaint, Defendant Messerman was a member of either Messerman & Messerman Co., L.P.A., or Duvin, Cahn, Barnard & Messerman, L.P.A., both legal professional associations duly organized under Ohio law and located in Cleveland, Ohio.

4.    At all times relevant to this Complaint, Defendant Messerman was engaged in the practice of law, within the scope of his employment with and/or within the scope of his apparent or implied agency of either Messerman & Messerman Co., L.P.A. or Duvin, Cahn, Barnard & Messerman, L.P.A.

5.    The Defendant Sheppard Pratt is a corporation duly registered under the laws of the State of Maryland.

-2-

6.   The Defendant Sheppard Pratt operates a psychiatric hospital which provides mental health services and related services and programs.

7.   The Defendant Sheppard Pratt  s principal place of business is located in Baltimore County, Maryland.

8.   The Defendant Grossbart is a licensed attorney whose principal place of business is in Baltimore City, Maryland.

### FACTS

9.   On or about June 20, 1981 Plaintiff Bond, a juvenile at the time, was arrested by the Geauga County, Ohio, Sheriff  s Department for allegedly causing the death of his father.

10.  Plaintiff Bond was charged and prosecuted in the Common Pleas Court, Juvenile Division of Geauga County, Ohio.

11.   Shortly thereafter, Defendant Messerman was retained to represent Plaintiff Bond in the juvenile delinquency proceedings that were instituted because of Plaintiff Bond allegedly causing the death of his father (hereinafter  the juvenile case  ).

12.  Defendant Messerman was paid a large sum of money to represent Plaintiff Bond in the juvenile case.

13.  On or about August 31, 1981, Plaintiff Bond, upon the advice of his legal counsel Defendant Messerman, proffered a plea of delinquent to the charges in the juvenile case.

14.   On or about August 31, 1981 the Juvenile Court accepted Plaintiff Bond  s plea of delinquent and immediately proceeded to disposition.

15.   On or about August 31, 1981, Plaintiff Bond was committed to the permanent custody of the Ohio Youth Commission.

16.   This commitment to the Ohio Youth Commission was immediately suspended pending a 60 day evaluation at the Sheppard and Enoch Pratt Hospital in Towson, Maryland, a mental health facility owned and operated by Defendant Sheppard Pratt.

17.   Defendant Sheppard Pratt was to evaluate Plaintiff Bond to determine the suitability and feasibility of Plaintiff Bond being committed to Defendant Sheppard Pratt for treatment, care, and counseling.

18.   Defendant Sheppard Pratt was ordered by the Juvenile Court to submit a report accepting Plaintiff Bond as a suitable patient along with a diagnosis, prognosis, program of treatment and care, and the projected duration of such program.

19.   Defendant Messerman, as legal counsel for Plaintiff Bond in the juvenile case, located and identified Defendant Sheppard Pratt as an appropriate and suitable facility for Plaintiff Bond in which he could receive mental health services as a condition of the disposition in the juvenile case.

20.   Defendant Messerman, as counsel for Plaintiff Bond in the juvenile case, negotiated the plea agreement ultimately

-4-

accepted by Plaintiff Bond, the State of Ohio, and the Juvenile Court.

21.   As part of this plea agreement, Defendant Messerman convinced all parties to the agreement that Defendant Sheppard Pratt was a secure mental health facility at which Plaintiff Bond would be a suitable patient engaged in a suitable program of treatment, care, and rehabilitation.

22.   On or about September 23, 1981, Plaintiff Bond was admitted to Defendant Sheppard Pratt for the aforementioned evaluation.

23.   On or about December 11, 1981, the Juvenile Court held a hearing on final disposition of the juvenile case and placed Plaintiff Bond in the temporary custody of Defendant Sheppard Pratt for care and treatment.

24.   On or about September 13, 1982 the Juvenile Court held another hearing in the juvenile case and placed Plaintiff Bond on probation to the Geauga County Juvenile Court until the age of twenty-one (21), on the condition, *inter alia*, that Plaintiff Bond continue treatment at Defendant Sheppard Pratt.

25.   On or about February 22, 1985, the Juvenile Court for Geauga County, Ohio, terminated Plaintiff Bond s probation and discharged Plaintiff Bond from said probation.

26.   On or about December 4, 1985, Plaintiff Bond s probation officer mailed to Plaintiff Bond a letter informing him

-5-

that his probation status with Geauga County Juvenile Court had been officially terminated and that under Ohio law, Plaintiff Bond could  file an application, available from this Court, for the expungement of [his] juvenile record two years from this action  .

27.   Shortly thereafter, Plaintiff Bond read this letter and decided he wanted to protect his privacy and seek an expungement of his juvenile record and communicated this desire to his attorney, Defendant Messerman.

28.  Plaintiff Bond and Defendant Messerman first discussed the concept of expungement in 1981, prior to the proffer of the delinquent plea to the charges in the juvenile case, its legal effects under Ohio law and the importance to Plaintiff Bond of being able to expunge his juvenile record.

29.   On or about January 17, 1986, Defendant Messerman wrote a letter advising Plaintiff Bond that his probation was terminated and sent Plaintiff Bond a copy of the Juvenile Court order terminating Plaintiff Bond  s probation.

30.   In the same letter, Defendant Messerman acknowledged Plaintiff Bond  s desire to seek the expungement of his juvenile records, writing Plaintiff Bond to   [p]lease remind me in two years to file an application for expungement and I will do so.

31.   Shortly thereafter, Plaintiff Bond called Defendant Messerman to discuss the issue of expungement and to advise

Defendant Messerman that Plaintiff Bond expected Defendant Messerman to take the necessary steps to obtain the expungement of the juvenile case without a reminder from Plaintiff Bond.

32.    Defendant Messerman acknowledged Plaintiff Bond s directive and promised to take care of the matter of expungement at the appropriate time.

33.    In the early 1990s, Plaintiff Bond created and wrote a highly embellished and fictionalized account of the events surrounding his father s death, his prosecution by the State of Ohio and his time at the Defendant Sheppard Pratt s mental health facility.

34.    As Plaintiff Bond was preparing to market his manuscript he was advised of the importance of protecting the confidentiality and privilege of his juvenile and mental health records to avoid any potential plagiarism or independent investigation of the events that inspired the contents of his manuscript.

35.    On or about May 12, 1994, Plaintiff Bond wrote Defendant Messerman informing Defendant Messerman of the manuscript and asking him to confirm that Plaintiff Bond s juvenile record had been expunged or to research and investigate whether Plaintiff Bond s juvenile record could be expunged if it was not already.

36.   On May 16, 1994, Defendant Messerman wrote a response to Plaintiff Bond  s May 12, 1994 letter, stating incorrectly that:

> There is no procedure for expunging your juvenile record.  It is automatically expunged   in the sense that it is private, confidential and sealed.  It is not a criminal record.  You don  t have to worry about it.

37.   On June 2, 1994, Plaintiff Bond wrote to Defendant Messerman asking him that if expungement was automatic, why did the aforementioned December 4, 1985 letter from the Juvenile Court and the aforementioned January 17, 1985 letter from the Defendant Messerman mention filing for expungement.

38.   In subsequent telephone conversations with Plaintiff Bond, Defendant Messerman assured Plaintiff Bond that his juvenile record was expunged.

39.   On or about August 22, 1994, Plaintiff Bond filled out an application to purchase a 9mm Glock handgun from Duffy  s Gun Room in Baltimore County, Maryland.

40.   On or about December 23, 1994, Plaintiff Bond filled out applications to purchase a .25 caliber Beretta handgun and a .357 caliber Smith & Wesson handgun from Duffy  s Gun Room in Baltimore County, Maryland.

41.   On or about May 4, 2001, Plaintiff Bond filled out an application to purchase a .38 caliber Smith & Wesson handgun from Duffy  s Gun Room in Baltimore County, Maryland.

-8-

42.    All of the above applications to purchase handguns were submitted to the Maryland State Police (hereinafter  MSP ) and ultimately returned  not disapproved [1].

43.    After receiving approval from the MSP, Plaintiff Bond purchased all of the aforementioned handguns and took possession of them shortly after the applications were processed by the MSP.

44.    Each of the aforementioned applications to purchase a handgun submitted to the MSP by Plaintiff Bond in 1994 contained a question regarding whether the applicant had ever been committed to a mental institution.

45.    The 2001 application to purchase a handgun submitted to the MSP by Plaintiff Bond contained a question regarding whether the applicant had ever spent more than 30 consecutive days in a mental institution for treatment of a mental disorder or disorders.

46.    On each of the aforementioned applications to purchase a handgun, Plaintiff Bond responded  no  to the question asking whether he had ever been committed to a mental institution.

47.    On each of the aforementioned applications to purchase a handgun, Plaintiff Bond  s response was made under oath and under penalty of perjury, as required by Maryland law.

---

[1]    Plaintiff Bond also purchased from Valley Gun Shop in Baltimore City a .38 Smith & Wesson revolver on or about September 17, 1993, and a 9mm Glock pistol on or about April 30, 1994.  Plaintiff Bond was not prosecuted for these purchases because the applicable statute of limitations had expired.

48.    Plaintiff Bond responded in the negative to the application questions regarding commitment to a mental institution because he believed all records pertaining to the juvenile case had been expunged.

49.    Plaintiff Bond believed these juvenile records had been expunged because he had been told by Defendant Messerman they were expunged and sealed.

50.    Plaintiff Bond was also told by Defendant Messerman that under Ohio law, when juvenile records have been expunged or sealed the matters contained in the records are deemed never to have occurred .

51.    Defendant Messerman explained this to Plaintiff Bond in 1981 when Plaintiff Bond initially asked Defendant Messerman about expungement of his juvenile record, and again in 1985-1986 when they discussed expungement of Plaintiff Bond s juvenile record.

52.    In 1994 Defendant Messerman again explained to Plaintiff Bond that Plaintiff Bond s juvenile records and the matters contained therein were deemed never to have occurred by Ohio law.

53.    In 1992, Plaintiff Bond sought the advice of Norman E. Pessin, Esquire, a Maryland attorney, regarding whether he could legally obtain a permit to carry a handgun in Maryland.

54.   In his consultations with Mr. Pessin regarding permits to carry a handgun in Maryland, Plaintiff Bond specifically asked Mr. Pessin whether Plaintiff Bond should disclose his stay at Defendant Sheppard Pratt pursuant to the disposition of the juvenile case.

55.   Plaintiff Bond sought Attorney Pessin s counsel on this issue because an application to obtain a permit to carry a handgun in Maryland requires the applicant to answer, under oath and subject to penalty of perjury, whether the applicant has been committed to any juvenile detention, training or correctional institution for juveniles for longer than one year after an adjudication of delinquency by a juvenile court within ten (10) years of the application.

56.   When Plaintiff Bond told Attorney Pessin his juvenile record had been expunged and Defendant Messerman had told Plaintiff Bond that under Ohio law expungement meant all the matters contained in the juvenile records were   deemed never to have occurred  , Attorney Pessin opined that the juvenile case did not render Plaintiff Bond ineligible to receive a permit to carry a handgun in Maryland and that Plaintiff Bond was under no legal duty to reveal his stay at the Defendant Sheppard Pratt as a result of the juvenile case.

57.   On or about 1994 Plaintiff Bond applied to the MSP for a permit to carry a handgun in Maryland.

-11-

58.    On or about 1994 Plaintiff Bond  s application for a permit to carry a handgun in Maryland was approved and the MSP issued him a permit to carry a handgun within the State of Maryland.

59.    On or about May 4, 2001, Dudley F. B. Hodgson (hereinafter   Hodgson  ), a licensed private investigator, contacted the MSP to tell them that Plaintiff Bond had been committed to Defendant Sheppard Pratt as a juvenile for the death of his father in 1982.

60.    Hodgson learned this confidential and privileged information from Defendant Grossbart, who learned about Plaintiff Bond  s juvenile case and some of the surrounding facts and circumstances during the course of representing Plaintiff Bond in an estates and trust legal matter.

61.    Defendant Grossbart disseminated this confidential and privileged information about Plaintiff Bond without Plaintiff Bond  s express or implicit authorization and without Plaintiff Bond  s knowledge.

62.    Plaintiff Bond told Defendant Grossbart this confidential and privileged information in confidence during the course of his attorney-client relationship with Defendant Grossbart, and expected Defendant Grossbart to protect Plaintiff Bond  s confidentiality, and the confidential and privileged nature of this information, at all times thereafter.

-12-

63.    The MSP then began an investigation of Plaintiff Bond in May of 2001.

64.    The MSP learned that Plaintiff Bond had purchased firearms from Duffy s Gun Room and Valley Gun in 1993, 1994 and 2001.

65.    The MSP also learned that in 1993, 1994 and 2001, Plaintiff Bond answered  no  when asked whether he had ever been committed to a mental institution on each of the applications to purchase the above handguns from Duffy s Gun Room and Valley Gun.

66.    On May 9, 2001, Hodgson provided to the MSP a copy of the aforementioned manuscript Plaintiff Bond had written in the early 1990s about the events surrounding his father s death, his prosecution by the State of Ohio and his time at the Defendant Sheppard Pratt s mental health facility, and a confidential police report which included confidential court records and confidential and privileged mental health records.

67.    In the manuscript the MSP read that subsequent to his father s death, Plaintiff Bond was in the Defendant Sheppard Pratt s mental health facility from the ages of seventeen (17) to eighteen (18).

68.    The MSP also learned that on May 1, 2002 Plaintiff Bond reported to the Baltimore City Police Department a breaking and entering and theft of a .38 caliber revolver type handgun from his home in Baltimore City, Maryland.

-13-

69.    The MSP learned that Plaintiff Bond told the responding Baltimore City Police Officer that the stolen gun had been purchased by Plaintiff Bond and Plaintiff Bond showed the officer the paperwork recording the transaction of the sale.

70.    Plaintiff Bond also told the officer that there were other handguns in a safe at the time of the theft.

71.    On May 15, 2001, the MSP requested a certified copy of the juvenile case docket entries from the Court of Common Pleas, Juvenile Division, Geauga County, Ohio.

72.    On May 22, 2001, the MSP received the requested juvenile records from the Court of Common Pleas, Juvenile Division, Geauga County, Ohio.

73.    Among these juvenile records given to the MSP were records showing that Plaintiff Bond was admitted to the Defendant Sheppard Pratt for a sixty (60) day evaluation.

74.    Had the juvenile records been expunged or sealed, as Defendant Messerman repeatedly claimed, under Ohio law the juvenile records could only have been released upon the application of Plaintiff Bond himself.

75.    Based on this information, on May 23, 2001, the MSP obtained a warrant for Plaintiff Bond s arrest for the Illegal Possession of a Regulated Firearm, Annotated Code of Maryland, Article 27, §445(d), a felony punishable by a mandatory minimum penalty of five (5) years incarceration without the possibility

of parole and/or a $10,000.00 fine.

76.   On May 23, 2001, the MSP also obtained a Search and Seizure Warrant to search the premises of Plaintiff Bond s home in Baltimore City.

77.   On May 25, 2001, at approximately 7:15 a.m., members of the MSP Firearms Investigation Unit, Regional Warrant Apprehension Task Force and the Baltimore City Police Department executed the aforementioned Search and Seizure Warrant upon Plaintiff Bond s home in Baltimore City.

78.   Plaintiff Bond was arrested and handcuffed at gunpoint at the same time the aforementioned warrant was executed.

79.   Plaintiff Bond was subject to the indignity of the arrest in his own home and suffered the embarrassment of having to call his wife and tell her he had been arrested and their home was being searched by numerous police officers, as well as having numerous neighbors witness these events.

80.   Seventeen (17) police officers, all openly wearing various types of guns and weapons, searched Plaintiff Bond s home for approximately four (4) hours.

81.   Numerous neighbors and passerbys witnessed the entire incident.

82.   During the course of the search, several of the officers ransacked various areas of Plaintiff Bond s home.

83.  When Plaintiff Bond was arrested he was fingerprinted, photographed and processed as a prisoner.

84.  After the booking process, Plaintiff Bond was taken to the Central Booking Facility of Baltimore City where he was imprisoned until the next morning.

85.  Despite the fact he had no criminal record and no record of not appearing in court for trial, Plaintiff Bond was required to post bond in the amount of $200,000 in order to obtain his release from the Central Booking Facility pending trial.

86.  The Commissioner who set Plaintiff Bond s bail advised him that the charge for which he was arrested carried a mandatory minimum penalty of five (5) years imprisonment without the possibility of parole.

87.  Plaintiff Bond had to pay $10,000.00 to a bail bondsman to post $100,000 of the aforementioned $200,000 bond.

88.  Plaintiff Bond had to post his home as collateral for the remaining $100,000 of the bond.

89.  Eventually the State s Attorney for Baltimore City charged Plaintiff Bond with eight (8) counts of Possessing Regulated Firearms After Having Been Confined for More Than Thirty (30) Consecutive Days to a Mental Health Facility, Annotated Code of Maryland, Article 27, §445(2)(iv), a

misdemeanor punishable by five (5) years imprisonment and/or a
$10,000 fine.

90.  At his first appearance before the Circuit Court for
Baltimore City, Plaintiff Bond was told that if he pled guilty,
the prosecutor would recommend a sentence of ten (10) years,
suspend all but five (5) to be served in the Maryland Division of
Correction, the State penitentiary system.

91.  This plea offer was made to Plaintiff Bond despite
the fact he had no criminal record and the Maryland Sentencing
Guidelines called for a sentence of probation on the charges
before the Court.

92.  Plaintiff Bond had to hire a criminal defense attorney
to defend him against the aforementioned Baltimore City charges.

93.  During the course of defending this Baltimore City
prosecution, Plaintiff Bond expended large sums of money for
legal fees, expert witness fees and other related expenses.

94.  On or about June 5, 2001, Plaintiff Bond was charged by
the Office of the Attorney General of Maryland (hereinafter
Attorney General   s Office) with Knowingly Giving False
Information and Making a Material Misstatement on an Application
to Purchase a Regulated Firearm, Annotated Code of Maryland,
Article 27, §442(h)(2)(v), a misdemeanor punishable by three (3)
years imprisonment and/or a $5,000 fine.

-17-

95.   Plaintiff Bond was also charged by the Attorney General  s Office with Perjury in an Application to Purchase a Regulated Firearm, Annotated Code of Maryland, Article 27, §435, a high misdemeanor punishable by ten (10) years imprisonment.

96.   The Attorney General  s Office filed these charges in the Circuit Court for Howard County on or about July 5, 2001.

97.   On July 10, 2001, Plaintiff Bond was again arrested fingerprinted, photographed and then released on the same conditions of pretrial release as those in the Baltimore City case.

98.   Plaintiff Bond had to hire a criminal defense attorney to defend him against the Howard County charges.

99.   During the course of defending this Howard County prosecution, Plaintiff Bond expended large sums of money for legal fees, expert witness fees, and other related expenses.

100.  The Howard County charges arose out of the same facts and transactions alleged in the Baltimore City case, and dealt specifically with Plaintiff Bond allegedly submitting false applications for purchase of handguns, regulated firearms in Maryland, to the MSP Licensing Unit which is located in Howard County, Maryland.

101.  On or about July 20, 2001, the Office of the State  s Attorney for Baltimore City issued a   Subpoena Duces Tecum  ,

which purported to be a subpoena issued by the Grand Jury for Baltimore City, to the Defendant Sheppard Pratt.

102.    This purported subpoena requested   all certified medical records   pertaining to Plaintiff Bond.

103.    This purported subpoena noted that Plaintiff Bond was admitted to Defendant Sheppard Pratt   8/31/81 for evaluation and was eventually committed to Sheppard Pratt as juvenile in 1982 for the murder of his father  .

104.    This purported subpoena directed Defendant Sheppard Pratt to furnish the requested medical records to the State  s Attorney  s Office within five (5) days after service of the subpoena, and in accordance with the secrecy of the Grand Jury, not to disclose the existence of the subpoena.

105.    Prior to Sheppard Pratt receiving this purported subpoena, Plaintiff Bond called the records department of Defendant Sheppard Pratt and instructed them to notify him if anyone requested any records pertaining to him in Defendant Sheppard Pratt  s possession or control.

106.    Defendant Sheppard Pratt responded to this purported subpoena on or about July 23, 2001, by producing the complete record of Plaintiff Bond  s stay at Defendant Sheppard Pratt in connection with the juvenile case, including all medical records which are confidential under Maryland law, Annotated Code of Maryland, Health General Article, §4-301, et seq.; all mental

health records which are confidential and privileged under
Maryland law, Annotated Code of Maryland, Health General Article,
§4-301 and §4-307, Annotated Code of Maryland, Courts and
Judicial Proceedings Article, §9-109 and §9-109.1; and all police
records and court records maintained and possessed by Defendant
Sheppard Pratt in connection with Plaintiff Bond s juvenile case,
which are confidential under Maryland law, Annotated Code of
Maryland, Courts and Judicial Proceedings Article §3-8A-27
(§3-828 at the time of the illegal disclosure).

107.   The criminal information charging Plaintiff Bond in
Baltimore City was filed on June 25, 2001, nearly one month prior
to the issuance of the this purported  Grand Jury subpoena  .

108.   A Grand Jury was never convened at any time, for any
purpose in connection with Plaintiff Bond s Baltimore City
criminal case.

109.   This subpoena was signed by the Honorable Wanda Keyes
Heard, a judge of the Circuit Court for Baltimore City, not the
foreperson of the Grand Jury for Baltimore City.

110.   There was no certificate attached to the subpoena,
as required by Maryland law, certifying that a copy of the
subpoena was previously served on Plaintiff Bond or his attorney
by the State s Attorney for Baltimore City and/or the Grand Jury
for Baltimore City, or that the service of the subpoena and
attached certificate had been waived by the Court for good cause.

-20-

111.    There was no statement in the subpoena itself or
attached to the subpoena as required by Maryland law, verifying
that the medical records sought by the subpoena were sought for
the sole purpose of furthering an investigation or prosecution of
criminal activity, nor was there any statement within the
subpoena or attached thereto that the State s Attorney for
Baltimore City or the Grand Jury for Baltimore City, or any law
enforcement agency working with either or both of them, had
written procedures in place to protect the confidentiality of the
medical records.

112.    There was no certificate attached to the subpoena, as
required by Maryland Law, notifying Plaintiff Bond or his
attorney that the State s Attorney s Office for Baltimore City
and/or the Grand Jury for Baltimore City was/were requesting the
Defendant Sheppard Pratt to disclose Plaintiff Bond s medical
records developed in connection with the provision of mental
health services, notifying Plaintiff Bond or his attorney of the
applicable provisions of law under which Plaintiff Bond s medical
records developed in connection with the provision of mental
health services were sought, notifying Plaintiff Bond or his
attorney of the procedure for filing a motion to quash the
Subpoena or a motion for protective order, nor was there any
proof attached to the subpoena that the subpoena was mailed, by
certified mail, return receipt requested, to Plaintiff Bond or

his attorney on or before the date of filing the request for the issuance of the subpoena.

113.    There was no order from the Juvenile Court of Baltimore City, Baltimore County, or Geauga County, Ohio as required by Maryland law, stating that upon good cause shown by the State s Attorney for Baltimore City, the Grand Jury for Baltimore City, or any other person or entity, that the records in possession of Defendant Sheppard Pratt should be released pursuant to the subpoena.

114.    The Defendant Sheppard Pratt thus released Plaintiff Bond s confidential medical records, confidential and privileged mental health records, and confidential police and court records to the State s Attorney s Office for Baltimore City in blatant violation of the legal protections promulgated by the General Assembly of Maryland to protect the confidentiality and privilege of the requested records as well as Plaintiff Bond s constitutional right to privacy.

115.    The illegal, improper, and wrongful release of these records resulted in these records, and the matters contained therein, being publicized and disseminated to numerous people and institutions including, but not limited to, members of the public at large, the news media, courthouse personnel, law enforcement personnel, and Plaintiff Bond s friends, family, and acquaintances, personal and professional.

-22-

116.    On April 22, 2002 the Baltimore City charges were dismissed by the Circuit Court for Baltimore City and Plaintiff Bond was thus acquitted of all the Baltimore City charges.

117.    On May 3, 2002, upon motion of the State of Maryland, the Circuit Court for Howard County placed the Howard County charges on the stet docket, but only on the conditions that Plaintiff Bond forfeit all ownership, right, title and interest he may have had in seven (7) handguns that were seized by the police from his home on May 25, 2001, and that Plaintiff Bond agreed not to possess firearms of any kind during the three year period the case was on the stet docket.

## COUNT I    DEFENDANT MESSERMAN
### (Legal Malpractice)

118.    Plaintiff Bond adopts by reference the allegations contained in paragraphs 1 through 117 of this Complaint with the same effect as if fully set forth herein.

119.    Plaintiff Bond employed Defendant Messerman to represent him in the aforementioned juvenile case.

120.    This legal representation included all matters pertaining to the juvenile case after the adjudicatory hearing phase of the case, including, but not limited to, pursuing and obtaining expungement and sealing of Plaintiff Bond s juvenile record.

121.    Plaintiff Bond paid Defendant Messerman a substantial amount of money for his services in the aforementioned legal

representation in the juvenile case.

122.    Upon information and belief, at all times relevant to this Complaint, Defendant Messerman not only individually rendered legal services to Plaintiff Bond in the juvenile case, but was also performing legal services for Plaintiff Bond within the scope of his employment and/or within the scope of his apparent authority to act for his employers Messerman & Messerman, Co., L.P. A. and/or Duvin, Cahn, Barnard & Messerman, L.P.A.

123.    Defendant Messerman owed Plaintiff Bond a reasonable duty to exercise that degree of ordinary care and diligence in pursuing and obtaining expungement and sealing of Plaintiff Bond s juvenile record as used by attorneys engaged in the practice of law.  This reasonable duty included, but was not limited to, properly investigating all factual aspects of the case, thoroughly and competently researching the applicable law, analyzing the facts of the case in light of the applicable law, and pursuing and completing any legal act, motion, petition or proceeding necessary to protect Plaintiff Bond s legal interests and to accomplish the goals of Plaintiff Bond s directives within the scope of the legal representation.

124.    Defendant Messerman breached the duty he owed Plaintiff Bond by negligently failing to render proper and competent legal representation to Plaintiff Bond, by doing or

-24-

failing to do the following: by failing to pursue and obtain the sealing of Plaintiff Bond s juvenile record, by negligently and incorrectly telling Plaintiff Bond that his juvenile record was automatically expunged, by negligently and incorrectly telling Plaintiff Bond that expungement of his juvenile record was something available to him, by negligently and incorrectly telling Plaintiff Bond his juvenile record was sealed, by negligently and incorrectly telling Plaintiff Bond that his juvenile record would never be disseminated and/or disclosed to anyone or any entity, and by negligently and incorrectly telling Plaintiff Bond that he was entitled to consider that all matters contained in his juvenile record were legally  deemed never to have occurred  .

125.   But for Defendant Messerman  s negligence in representing Plaintiff Bond as stated above, Plaintiff Bond never would have been arrested, imprisoned and prosecuted by the State of Maryland as described above; his home never would have been searched and ransacked against his will as described above; his property never seized against his will as described above; he never would have incurred substantial legal fees as described above; he never would have incurred substantial costs and expenses relating to the defense of the criminal cases brought by the State of Maryland as described above; he never would have had to post bond to secure his release from confinement as described

above; he never would have undergone and suffered the humiliation and indignity associated with the aforementioned occurrences; he never would have suffered the dissemination and publication of the private matters contained in his confidential juvenile police and court records, his confidential medical records, his confidential and privileged mental health records and the embarrassment, indignity and humiliation attendant to the dissemination and publication of these records; he never would have suffered the violation of his constitutional right to privacy as described above; he never would have had to forfeit his property interest in the handguns seized from his home by the police as described above; and he never would have had to forfeit his constitutional, statutory and common law right to possess firearms as described above.

126.   As a result of Defendant Messerman's negligence, Plaintiff Bond has suffered substantial, legally compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Messerman for compensatory damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000), plus attorneys fees, interest, costs, and any and all other relief to which this Court finds him entitled.

## COUNT II     DEFENDANT MESSERMAN
### (Negligent Misrepresentation)

127.   Plaintiff Bond adopts by reference the allegations contained in paragraphs 1 through 126 of this Complaint with the same effect as if fully set forth herein.

128.   In representing Plaintiff Bond in the juvenile case, Defendant Messerman had a duty to provide legally accurate informed consent and legal advice regarding Plaintiff Bond s directive to obtain the expungement and sealing of Plaintiff Bond s juvenile record.

129.   Defendant Messerman incorrectly advised Plaintiff Bond, as described above, that his juvenile record was automatically expunged and sealed, that Plaintiff Bond was legally entitled to deem that the matters contained in the juvenile records never occurred, that Plaintiff Bond did not have to worry about his juvenile record  , and that Plaintiff Bond s juvenile record would never be disseminated and/or disclosed to anyone or any entity.

130.   Defendant Messerman s representations to Plaintiff Bond that his juvenile record was expunged, private, confidential and sealed were false.

131.   Defendant Messerman s representations to Plaintiff Bond that he was legally entitled to consider all matters contained in his juvenile record   deemed never to have occurred were false.

-27-

132.   Defendant Messerman  s representations to Plaintiff Bond that Plaintiff Bond   did not have to worry   about his juvenile record were false.

133.   Defendant Messerman  s representations to Plaintiff Bond that his juvenile record would never be disseminated and/or disclosed to anyone or any entity were false.

134.   Defendant Messerman was negligent in the assertion of these aforementioned false representations to Plaintiff Bond.

135.   The aforementioned false representations made by Defendant Messerman to Plaintiff Bond were made with the intention of having Plaintiff Bond act and rely upon Defendant Messerman  s negligent advice.

136.   Defendant Messerman knew Plaintiff Bond would probably rely upon, and was in fact relying upon, Defendant Messerman  s aforementioned negligent assertions regarding the expungement and sealing of Plaintiff Bond  s juvenile record.

137.   Defendant Messerman also knew that as a result of Plaintiff Bond  s reliance upon Defendant Messerman  s negligent statements and assertions concerning the expungement and sealing of Plaintiff Bond  s juvenile record, Plaintiff Bond would incur damage.

138.   Because Plaintiff Bond was and is a layperson and was relying upon the professional advice of his attorney Defendant Messerman on all matters pertaining to the expungement and

sealing of Plaintiff Bond  s juvenile record, Plaintiff Bond was justified in his reliance on Defendant Messerman  s negligent and erroneous legal advice.

139.   As a result of the aforementioned negligent misrepresentations by Defendant Messerman, Plaintiff Bond has suffered substantial, legally compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Messerman for compensatory damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000), plus attorneys fees, interest, costs and any and all other relief to which this Court finds him entitled.

## COUNT III – DEFENDANT MESSERMAN
### (Breach of Fiduciary Duty)

140.   Plaintiff Bond adopts by reference the allegations contained in paragraphs 1 through 139 of this Complaint with the same effect as if fully set forth herein.

141.   Because Plaintiff Bond and Defendant Messerman were in an attorney-client relationship at all times relevant to this Complaint, Defendant Messerman owed to Plaintiff Bond a fiduciary duty.

142.   As a result of this fiduciary duty, Plaintiff Bond reposed trust and confidence in Defendant Messerman regarding all legal matters pertaining to the expungement and sealing of Plaintiff Bond  s juvenile records.

-29-

143.   Defendant Messerman breached this fiduciary duty owed to Plaintiff Bond by doing or failing to do the following: by failing to pursue and obtain the sealing of Plaintiff Bond s juvenile record, by negligently and incorrectly telling Plaintiff Bond that his juvenile record was automatically expunged, by negligently and incorrectly telling Plaintiff Bond that expungement of his juvenile record was something available to him, by negligently and incorrectly telling Plaintiff Bond his juvenile record was sealed, by negligently and incorrectly telling Plaintiff Bond that his juvenile record would never be disseminated and/or disclosed to anyone or any entity, and by negligently and incorrectly telling Plaintiff Bond that he was entitled to consider that all matters contained in his juvenile record were legally deemed never to have occurred.

144.   As a result of Defendant Messerman s breach of the confidential and fiduciary duty owed to Plaintiff Bond, Plaintiff Bond has suffered substantial, legally compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Messerman for compensatory damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000), and punitive damages against Defendant Messerman in the amount of Five Hundred Thousand Dollars ($500,000), plus attorneys fees, interest, costs, and any other relief to which this Court finds him entitled.

## COUNT IV - DEFENDANT MESSERMAN
### (Constructive Fraud)

145.    Plaintiff Bond adopts by reference the allegations contained in paragraphs 1 through 144 of this Complaint with the same effect as if fully set forth herein.

146.  Because Plaintiff Bond and Defendant Messerman were in an attorney-client relationship at all times relevant to this Complaint, Defendant Messerman owed to Plaintiff Bond a fiduciary duty.

147.    As a result of this fiduciary duty, Plaintiff Bond reposed trust and confidence in Defendant Messerman regarding all legal matters pertaining to the expungement and sealing of Plaintiff Bond s juvenile record.

148.    Defendant Messerman breached this fiduciary duty owed to Plaintiff Bond by doing or failing to do the following: by failing to pursue and obtain the sealing of Plaintiff Bond s juvenile record, by negligently and incorrectly telling Plaintiff Bond that his juvenile record was automatically expunged, by negligently and incorrectly telling Plaintiff Bond that expungement of his juvenile record was something available to him, by negligently and incorrectly telling Plaintiff Bond his juvenile record was sealed, by negligently and incorrectly telling Plaintiff Bond that his juvenile record would never be disseminated and/or disclosed to anyone or any entity, and by negligently and incorrectly telling Plaintiff Bond that he was

-31-

entitled to consider that all matters contained in his juvenile record were legally deemed never to have occurred.

149.    The aforementioned acts and/or omissions of Defendant Messerman during the course of the aforementioned fiduciary relationship with Plaintiff Bond violated Plaintiff Bond s trust and confidence in his attorney Defendant Messerman and/or injured the public interest by violating due process of law as guaranteed by the state and federal constitutions, by violating the statutory confidentiality, privilege and privacy afforded Plaintiff Bond by various juvenile and privacy laws, by violating Plaintiff Bond s constitutional right to privacy, and/or violated the trust and repose of the attorney-client relationship.

150.    As a result of Defendant Messerman s breach of fiduciary duty, Plaintiff Bond has suffered substantial, legally compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Messerman for compensatory damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000), and punitive damages against Defendant Messerman in the amount of Five Hundred Thousand Dollars ($500,000), plus attorneys fees, interest, costs, and any other further relief to which this Court finds him entitled.

### COUNT V - DEFENDANT SHEPPARD PRATT
### (Negligence)

151.    Plaintiff Bond adopts by reference the allegations contained in paragraphs 1 through 150 of this Complaint with the

-32-

same effect as if fully set forth herein.

152.   At all times relevant to this Complaint, Defendant Sheppard Pratt was a custodian of Plaintiff Bond s confidential medical records, confidential and privileged mental health records, confidential police records, and/or confidential juvenile court records generated and maintained in connection with Plaintiff Bond s juvenile case.

153.   Defendant Sheppard Pratt therefore had a duty to ensure and protect the confidentiality and privilege of Plaintiff Bond s juvenile record, medical and mental health records, and police and court records in its possession and control, and to ensure and protect Plaintiff Bond s constitutional right to privacy regarding the medical and mental health records of Plaintiff Bond in its possession and control, and to release and disseminate these records only in strict accordance with the various laws promulgated and legal protections afforded to protect the confidentiality and privilege of these records as well as Plaintiff Bond s constitutional right to privacy.

154.   Defendant Sheppard Pratt breached this duty of care owed to Plaintiff Bond by negligently releasing and disseminating Plaintiff Bond s confidential medical records, confidential and privileged mental health records, and confidential police and court records to the State s Attorney s Office for Baltimore City in blatant violation of the legal protections promulgated by the

General Assembly of Maryland to protect the confidentiality and privilege of these records as well as Plaintiff Bond s constitutional right to privacy.

155.   But for Defendant Sheppard Pratt s aforementioned negligence, Plaintiff Bond would have obtained the dismissal of the Baltimore City criminal charges much earlier than he did; would have been able to obtain an outright dismissal of the Howard County charges rather than having to agree to the charges being placed on the stet docket and having to agree not to possess firearms of any kind for three (3) years and having to forfeit all ownership, right, title and interest in seven (7) handguns seized from his home by the police; never would have undergone and suffered the humiliation, embarrassment and indignity associated with the release and dissemination of the private matters contained in the aforementioned confidential police, court, and medical records as well as the confidential and privileged mental health records; and he would not have incurred substantial legal fees and expenses as described above.

156.   As a result of Defendant Sheppard Pratt s negligence, Plaintiff Bond has suffered substantial, legally compensable economic loss and trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Sheppard Pratt for compensatory damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000), plus interest, costs,

-34-

and any other further relief to which this Court finds him
entitled.

## COUNT VI - DEFENDANT SHEPPARD PRATT
### (Breach of Fiduciary Duty)

157.    Plaintiff Bond adopts by reference the allegations
contained in paragraphs 1 through 156 of this Complaint with the
same effect as if fully set forth herein.

158.    Defendant Sheppard Pratt owed Plaintiff Bond a
fiduciary duty to maintain and possess Plaintiff Bond s juvenile,
police, court, medical, and mental health records in such a
manner as to preserve and protect the confidentiality and
privilege of these records as well as Plaintiff Bond s
constitutional right to privacy.

159.    Defendant Sheppard Pratt owed Plaintiff Bond a
further fiduciary duty to only release and disseminate these
records in strict compliance with the laws promulgated to protect
the confidentiality and privilege of these records as well as
Plaintiff Bond s constitutional right to privacy.

160.  Defendant Sheppard Pratt breached its fiduciary duty
owed to Plaintiff Bond by illegally releasing and disseminating
to the State s Attorney s Office for Baltimore City Plaintiff
Bond s confidential medical records, confidential and privileged
mental health records, and confidential juvenile, police, and
court records, in blatant violation of the legal protections
promulgated by the General Assembly of Maryland to protect the

-35-

confidentiality and privilege of these records as well as Plaintiff Bond s constitutional right to privacy.

161.    As a result of Defendant Sheppard Pratt s breach of the fiduciary duty owed to Plaintiff Bond, Plaintiff Bond has suffered substantial, legally compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Sheppard Pratt for compensatory damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000), plus interest, costs, and any other relief to which this Court finds him entitled.

### COUNT VII - DEFENDANT SHEPPARD PRATT
### (Constructive Fraud)

162.    Plaintiff Bond adopts by reference the allegations contained in paragraphs 1 through 161 of this Complaint with the same effect as if fully set forth herein.

163.    Defendant Sheppard Pratt owed Plaintiff Bond a fiduciary duty as described above.

164.    As a result of this fiduciary duty, Plaintiff Bond reposed trust and confidence in Defendant Sheppard Pratt that it would not under any circumstances release or disseminate Plaintiff Bond s confidential medical records, confidential and privileged mental health records, and confidential juvenile, police, and court records except in strict compliance with the laws protecting the confidentiality and privilege of these records and Plaintiff Bond s constitutional right to privacy.

165.    Defendant Sheppard Pratt breached this fiduciary duty owed to Plaintiff Bond by illegally and improperly releasing and disseminating to the State s Attorney s Office for Baltimore City Plaintiff Bond s confidential medical records, confidential and privileged mental health records, and confidential juvenile, police, and court records, in blatant violation of the legal protections promulgated by the General Assembly of Maryland to protect the confidentiality and privilege of these records as well as Plaintiff Bond s constitutional right to privacy.

166.    The aforementioned acts and/or omissions of Defendant Sheppard Pratt during the course of the aforementioned fiduciary relationship with Plaintiff Bond violated Plaintiff Bond s trust and confidence in Defendant Sheppard Pratt, the custodian of these confidential and privileged records and the confidential and privileged status of these records, and/or injured the public interest by violating various laws designed to protect the confidentiality and privilege of these records and Plaintiff Bond s constitutional right to privacy.

167.    As a result of Defendant Sheppard Pratt s breach of fiduciary duty, Plaintiff Bond has suffered substantial, legally compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Sheppard Pratt for compensatory damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000), plus interest, costs,

and any other relief to which this Court finds him entitled.

### COUNT VIII - DEFENDANT SHEPPARD PRATT
### (Unreasonable Publicity Given to Private Life)

168.    Plaintiff Bond adopts by reference the allegations contained in paragraphs 1 through 167 of this Complaint with the same effect as if fully set forth herein.

169.    By breaching its fiduciary duty to Plaintiff Bond as described above, and by illegally and improperly releasing and disseminating to the State s Attorney s Office for Baltimore City Plaintiff Bond s confidential medical records, confidential and privileged mental health records, and confidential juvenile, police, and court records in blatant violation of various laws designed to protect the confidentiality and privilege of these records and Plaintiff Bond s right to privacy, Defendant Sheppard Pratt illegally, improperly and wrongfully publicized the contents of these most private, confidential and privileged records.

170.    The matters contained within these illegally, improperly and wrongfully publicized documents were not of valid concern to the public in that they were legally protected by various laws designed to protect the confidentiality and privilege of the records and Plaintiff Bond s constitutional right to privacy.

171.    The illegal, improper and wrongful release of these records, and the matters contained therein, caused them to be

-38-

publicized to numerous people and institutions, including but not limited to members of the public at large, the news media, courthouse personnel, law enforcement personnel, and Plaintiff Bond s friends, family, and acquaintances, personal and professional.

172.   The illegal, improper, and wrongful release and dissemination of these private, confidential and privileged records was and is highly offensive to any reasonable person and constitutes unreasonable publicity given to Plaintiff Bond s private life.

173. The aforementioned illegal, improper, and wrongful release, dissemination and publication of these records caused Plaintiff Bond substantial, legally compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Sheppard Pratt for compensatory damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000), plus interest, costs, and any other relief to which this Court finds him entitled.

### COUNT IX - DEFENDANT GROSSBART
### (Legal Malpractice)

174. Plaintiff Bond adopts by reference the allegations contained in paragraphs 1 through 173 of this Complaint with the same effect as if fully set forth herein.

175.   On or about June of 1987, Plaintiff Bond retained Defendant Grossbart to draft a will for Plaintiff Bond and to

provide legal advice in connection with an estates and trust legal matter.

176. Plaintiff Bond paid Defendant Grossbart for his services in the aforementioned legal matters.

177. Defendant Grossbart owed Plaintiff Bond a reasonable duty to exercise that degree of ordinary care and diligence in representing Plaintiff Bond in these aforementioned legal matters.

178. This reasonable duty owed by Defendant Grossbart to Plaintiff Bond included, but was not limited to, maintaining and protecting the confidential and privileged nature of all matters and information pertaining to the aforementioned legal representation of Plaintiff Bond by Defendant Grossbart, especially the matters pertaining to the events surrounding and relating to the juvenile case, which were revealed to Defendant Grossbart by Plaintiff Bond only for the purpose of furthering the rendition of professional legal services, and with the reasonable expectation that Defendant Grossbart would protect Plaintiff Bond s confidentiality, and the confidential and privileged nature of this information, at all times thereafter.

179. Defendant Grossbart breached the duty he owed Plaintiff Bond by negligently, improperly, and unethically revealing and disseminating confidential and privileged information about Plaintiff Bond s juvenile case to Allan and

-40-

Robin Cohn, Plaintiff Bond s brother-in-law and sister-in-law, to numerous other friends, family and acquaintances of Plaintiff Bond, and to Hodgson, the licensed private investigator who ultimately told the MSP of Plaintiff Bond s juvenile case and Plaintiff Bond s stay at Defendant Sheppard Pratt.

180.    But for Defendant Grossbart s negligent, improper and unethical publication and dissemination of this confidential and privileged information, Plaintiff Bond never would have been arrested, imprisoned, and prosecuted by the State of Maryland as described above; his home never would have been searched and ransacked against his will as described above; his property never seized against his will as described above; he never would have incurred substantial legal fees as described above; he never would have incurred substantial costs and expenses relating to the defense of the criminal cases brought by the State of Maryland as described above; he never would have had to post bond to secure his release from confinement as described above; he never would have undergone and suffered the humiliation and indignity associated with the aforementioned occurrences; he never would have suffered the dissemination and publication of the private matters contained in his confidential juvenile police and court records, his confidential medical records, his confidential and privileged mental health records and the embarrassment, indignity, and humiliation attendant to the

-41-

dissemination and publication of these records; he never would have suffered the violation of his constitutional right to privacy as described above; he never would have had to forfeit his property interest in the handguns seized from his home by the police as described above; and he never would have had to forfeit his constitutional, statutory, and common law right to possess firearms as described above.

181.   As a result of Defendant Grossbart s negligence, Plaintiff Bond has suffered substantial, legally compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Grossbart for compensatory damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000), plus attorneys fees, interest, costs, and any other further relief to which this Court finds him entitled.

## COUNT X DEFENDANT GROSSBART
### (Breach of Fiduciary Duty)

182.   Plaintiff Bond adopts by reference the allegations contained in paragraphs 1 through 181 of this Complaint with the same effect as if fully set forth herein.

183.   As a result of their attorney-client relationship, Defendant Grossbart owed Plaintiff Bond a confidential and fiduciary duty to maintain and protect the confidential and privileged nature of all matters and information pertaining to the aforementioned legal representation of Plaintiff Bond by

Defendant Grossbart, especially the matters pertaining to the events surrounding and relating to the juvenile case, which were revealed to Defendant Grossbart by Plaintiff Bond only for the purpose of furthering the rendition of professional legal services, and with the reasonable expectation that Defendant Grossbart would protect Plaintiff Bond s confidentiality and privilege, and the confidential and privileged nature of this information, at all times thereafter.

184.    But for Defendant Grossbart s negligent, improper and unethical publication and dissemination of this confidential and privileged information, Plaintiff Bond never would have been arrested, imprisoned and prosecuted by the State of Maryland as described above; his home never would have been searched and ransacked against his will as described above; his property never seized against his will as described above; he never would have incurred substantial legal fees as described above; he never would have incurred substantial costs and expenses relating to the defense of the criminal cases brought by the State of Maryland as described above; he never would have had to post bond to secure his release from confinement as described above; he never would have undergone and suffered the humiliation and indignity associated with the aforementioned occurrences; he never would have suffered the dissemination and publication of the private matters contained in his confidential juvenile,

-43-

police, and court records, his confidential medical records, his confidential and privileged mental health records and the embarrassment, indignity, and humiliation attendant to the dissemination and publication of these records; he never would have suffered the violation of his constitutional right to privacy as described above; he never would have had to forfeit his property interest in the handguns seized from his home by the police as described above; and he never would have had to forfeit his constitutional, statutory, and common law right to possess firearms as described above.

185.  As a result of Defendant Grossbart s breach of this fiduciary duty, Plaintiff Bond has suffered substantial, legally compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Grossbart for compensatory damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000), plus attorneys fees, interest, costs, and any and all other relief to which this Court finds him entitled.

### COUNT XI DEFENDANT GROSSBART
#### (Constructive Fraud)

186.    Plaintiff Bond adopts by reference the allegations contained in paragraphs 1 through 185 of this Complaint with the same effect as if fully set forth herein.

187.    Defendant Grossbart owed Plaintiff Bond a fiduciary duty as described above.

-44-

188.  As a result of this fiduciary duty, Plaintiff Bond reposed trust and confidence in Defendant Grossbart that he would maintain and protect the confidential and privileged nature of all matters and information pertaining to the aforementioned legal representation of Plaintiff Bond by Defendant Grossbart, especially the matters pertaining to the events surrounding and relating to the juvenile case, which was revealed to Defendant Grossbart by Plaintiff Bond only for the purpose of furthering the rendition of professional legal services, and with the reasonable expectation that Defendant Grossbart would protect Plaintiff Bond  s confidentiality and privilege and the confidential and privileged nature of this information, at all times thereafter.

189.  Defendant Grossbart breached this fiduciary duty by not maintaining and protecting the confidential and privileged nature of all matters and information pertaining to the aforementioned legal representation of Plaintiff Bond by Defendant Grossbart, especially the matters pertaining to the events surrounding and relating to the juvenile case, which were revealed to Defendant Grossbart by Plaintiff Bond only for the purpose of furthering the rendition of professional legal services, and with the reasonable expectation that Defendant Grossbart would protect Plaintiff Bond  s confidentiality, and the

confidential and privileged nature of this information, at all times thereafter.

190.    The aforementioned acts and/or omissions of Defendant Grossbart during the course of the aforementioned fiduciary relationship with Plaintiff Bond violated Plaintiff Bond s trust and confidence in his attorney Defendant Grossbart and/or violated the public interest by violating and undermining Plaintiff Bond s and the public s confidence in the attorney-client relationship, in the confidentiality and privilege of attorney-client communications, in the confidential treatment of all information relating to a legal representation of a client, by violating Plaintiff Bond s right to privacy, and/or violating the trust and repose of the attorney-client relationship.

191.    As a result of Defendant Grossbart s breach of fiduciary duty, Plaintiff Bond has suffered substantial, legally compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant Grossbart for compensatory damages in the amount of Seven Hundred and Fifty Thousand Dollars ($750,000), and punitive damages against Defendant Grossbart in the amount of One Million Dollars ($1,000,000), plus attorney s fees, interest, costs, and any other further relief to which this Court finds him entitled.

## COUNT XII    DEFENDANT GROSSBART
### (Unreasonable Publicity Given To Private Life)

192.    Plaintiff Bond adopts by reference the allegations

-46-

contained in paragraphs 1 through 191 of this Complaint with the same effect as if fully set forth herein.

193.   By breaching his confidential and fiduciary duty to Plaintiff Bond as described above and by negligently, improperly, and unethically revealing and disseminating confidential and privileged information about Plaintiff Bond s juvenile case to Allan and Robin Cohn, Plaintiff Bond s brother-in-law and sister-in-law, to numerous other friends, family and acquaintances of Plaintiff Bond, and Hodgson, the licensed private investigator who ultimately told the MSP of Plaintiff Bond s juvenile case, and Plaintiff Bond s stay at Defendant Sheppard Pratt, Defendant Grossbart negligently, improperly, and unethically publicized private, confidential and privileged matters regarding the facts and circumstances surrounding Plaintiff Bond s juvenile case which were revealed to Defendant Grossbart by Plaintiff Bond only for the purpose of furthering the rendition of professional legal services, with the reasonable expectation that Defendant Grossbart would protect Plaintiff Bond s confidentiality and privilege, and the confidential and privileged nature of this information, at all times thereafter.

194.   But for Defendant Grossbart s negligent, improper, and unethical publication and dissemination of this confidential and privileged information, Plaintiff Bond never would have been arrested, imprisoned, and prosecuted by the State of Maryland as

described above; his home never would have been searched and
ransacked against his will as described above; his property never
seized against his will as described above; he never would have
incurred substantial legal fees as described above; he never
would have incurred substantial costs and expenses relating to
the defense of the criminal cases brought by the State of
Maryland as described above; he never would have had to post bond
to secure his release from confinement as described above; he
never would have undergone and suffered the humiliation and
indignity associated with the aforementioned occurrences; he
never would have suffered the dissemination and publication of
the private matters contained in his confidential juvenile police
and court records, his confidential medical records, his
confidential and privileged mental health records and the
embarrassment, indignity, and humiliation attendant to the
dissemination and publication of these records; he never would
have suffered the violation of his constitutional right to
privacy as described above; he never would have had to forfeit
his property interest in the handguns seized from his home by the
police as described above; and he never would have had to forfeit
his constitutional, statutory, and common law right to possess
firearms as described above.

      195.  The matters contained within this private,
confidential, and privileged information were not of a valid

-48-

concern to the public in that they were legally protected by
Plaintiff Bond s attorney-client privilege and Defendant
Grossbart s ethical and legal responsibility to hold these
matters in confidence.

196.  The negligent, improper, and unethical publication and
dissemination of private, confidential and privileged information
about Plaintiff Bond s juvenile case by Defendant Grossbart as
described above, caused this information to be publicized to
numerous people and institutions, including but not limited to
members of the public at large, the news media, courthouse
personnel, law enforcement personnel, Plaintiff Bond s friends,
family and acquaintances, personal and professional.

197.  This negligent, improper, and unethical publication
and dissemination of private, confidential and privileged
information was and is highly offensive to any reasonable person
and constitutes unreasonable publicity given to Plaintiff Bond s
private life.

198.  The aforementioned negligent, improper, and unethical
publication and dissemination of this private, confidential, and
privileged information caused Plaintiff Bond substantial, legally
compensable economic loss and emotional trauma.

WHEREFORE, Plaintiff Bond demands judgment against Defendant
Grossbart for compensatory damages in the amount of Seven Hundred
Fifty Thousand Dollars ($750,000) and for punitive damages in the

amount of One Million Dollars ($1,000,000) plus attorney s fees, interest, interest, costs, and any other relief to which this Court finds him entitled.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff William C. Bond demands that this matter be tried before a jury.

Respectfully submitted,

_____
Richard M. Karceski
Law Offices of Richard M. Karceski
305 Washington Avenue, Suite 301
Towson, Maryland 21204
(410) 494-7100

_____
Timothy M. Gunning
Law Offices of Timothy M. Gunning, LLC
305 Washington Avenue, Suite 301
Towson, Maryland 21204
(410) 296-5960

Attorneys for Plaintiff William C. Bond