IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

|  |  |  |
|---|---|---|
| ADELBERG RUDOW DORF & HENDLER LLC, | * | |
| Judgment Creditor | * | |
| v. | * | Case No.: MJG-01-CV-2600 |
| WILLIAM BOND, | * | |
| Judgment Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
ADELBERG, RUDOW, DORF & HENDLER, LLC'S, OPPOSITION
TO MOTION FOR PROTECTIVE ORDER**

Judgment Creditor Adelberg, Rudow, Dorf & Hendler, LLC ("Adelberg Rudow"), by its attorneys, Andrew Radding and Michael R. Severino, files this Memorandum in Support of its Opposition to Judgment Debtor, William C. Bond's ("Bond"), Motion for Protective Order.

### **INTRODUCTION**

In yet another attempt to delay the payment of a judgment for attorneys fees in favor of Adelberg Rudow, Bond has filed a Motion for Protective Order seeking (1) a protective Order concerning his financial status, (2) an Order requiring any deposition of him be taken before a Magistrate Judge, (3) a limitation on discovery, and (4) an Order quashing subpoenas issued to his counsel.

Like his appeals to the United States Supreme Court (*certiorari* pending) and United States Court of Appeals for the Fourth Circuit (stayed during the Supreme Court pendency), Bond's arguments are without merit.

M:\WP\121\slavin\pleadings\Oppositions_Memo_In_Support.wpd - 7/25/03

## **FACTUAL BACKGROUND**

In 1981, Bond beat his father to death with a hammer in his grandparent's garage in Ohio in order to collect from his father's estate. He was subsequently arrested and entered into a plea agreement that resulted in his transfer to the Sheppard & Enoch Pratt Hospital in Baltimore, Maryland, gaining release in 1982. Bond thereafter wrote a book entitled *Self-Portrait of a Patricide; How I Got Away With Murder*, which boasted how Bond planned and carried out the murder of his father and brags about fooling the police and collecting from his father's estate. Not surprisingly, Bond could not find a publisher for his manuscript.

Sometime thereafter, Bond met Allyson Slavin, who was then separated from her husband, William Slavin. Bond and Mrs. Slavin eventually married and a custody dispute ensued over minor children. Lawyers for Mr. Slavin (Defendants in this proceeding) intended to use the manuscript in the custody battle to demonstrate that the Bond-Slavin household was not fit for minor children and consequently introduced it into evidence during the custody proceeding.

In an effort to block the use of the manuscript in the custody action, Bond filed a copyright action against Mr. Slavin, his lawyers and others he believed acted to violate his purported rights in the manuscript. The District Court subsequently ruled that Bond's suit was frivolous and awarded fees in favor of defendants who had retained outside counsel. Bond appealed, as did the law firm defendants, who were not awarded fees. The Fourth Circuit affirmed the dismissal and reversed the failure to award fees to the law firm Defendants and remanded for further proceedings.

The District Court subsequently entered judgment in favor of Adelberg Rudow in the amount of $69,350.44. Bond, prolonging the inevitable, has since appealed the decision of the United States Court of Appeals for the Fourth Circuit to the United States Supreme Court and has filed a separate

appeal of the award of attorney's fees to Adelberg Rudow to the United States Court of Appeals for the Fourth Circuit.[1]

### ARGUMENT

A. Protective Order

Bond argues for the imposition of a protective Order in regard to his financial information and submits a proposed order. While Adelberg Rudow agrees that a protective Order is acceptable in this situation, it has attached hereto as Exhibit B its own proposed stipulation and protective Order.

While much like Bond's protective Order, Adelberg Rudow's protective Order shifts the burden to the party claiming confidentiality, as contemplated by the Local Rules. Pursuant to Adelberg Rudow's Order, should the parties fail to agree on a designation regarding the confidentiality of a document, the party *seeking* the confidentiality must file with the Court an appropriate motion, as opposed as to the party objecting thereto. Under this scheme, the party seeking discovery, as it is permitted to do pursuant to the Federal Rules of Civil Procedure, does not have the burden and expense of filing a motion with the Court to enforce its rights. On the contrary, the party seeking to designate materials as confidential, that is seeking to limit discovery or withhold the designation of a document, has the burden as to that issue. This is in accordance with Local Rule 104.13, which states in pertinent part that "[a]ny proposed confidentiality order shall include . . . a method for challenging particular designations of confidentiality *with the burden remaining on the party seeking confidentiality to justify it under Rule 26(c) . . .*" (italics added) Accordingly, the

---

[1] The opinion of the United States Court of Appeals for the Fourth Circuit, attached hereto as Exhibit A, gives a much more detailed recitation of the factual history of this case and also gives an excellent view of the tenor of this litigation and the culpability of the parties.

expense should be borne by the party resisting discovery and seeking to designate a document as confidential.

Additionally, the Order submitted by Adelberg Rudow includes the other Defendants who were frivolously sued and brought into this action and, more importantly, may have information regarding or may be able to comment on Bond's financial status. Those individual Defendants, whom Bond seeks to exclude from any confidential information, also have been awarded attorneys' fees in their favor and should be permitted to utilize information gained by Adelberg Rudow to enforce their judgments. By excluding them from information gained in this proceeding, Bond simply seeks to make those Defendants, who have smaller judgments, go through the extra work of noting separate depositions and propounding separate sets of discovery.

B.    Deposition of Judgment Debtor

Bond has also requested that this Court order that any deposition of him be taken in the presence of a Magistrate Judge. Such a request is ludicrous and without merit, especially considering Bond's own actions at prior depositions.

Bond's deposition is currently scheduled for August 15, 2003, at 10:00 a.m. Bond has not given any reason why the presence of a Magistrate Judge is needed other than his perceived feelings of belligerence by opposition counsel. However, it should be pointed out that throughout his deposition in this action, as well as his deposition in the child custody proceeding, Bond refused to answer numerous questions and attempted to stonewall counsel. Bond, who brought this frivolous action against a number of Defendants and caused their substantial expense, can deal with deposition questioning as to his finances. As with any other litigation, Bond always has the option of contacting the Court and/or objecting at deposition should he believe any attorney is acting outside the bounds

of the Federal and/or ethical rules. Finally, as Bond points out in his Motion, the criminal proceedings related to him have either been dismissed or put on the stet docket; accordingly, there should not be any objections on that basis.

While Adelberg Rudow certainly has no objection to the Court presiding over such a deposition, it believes that such an unusual proceeding is not necessary and that the Court has better things to do than preside over hours of collection depositions.

C.      Limitation on Discovery

Bond requests that Interrogatories and Request for Production of Documents directed to him be limited to a period from the date of judgment entered against him (May 6, 2003) until present. In present form, information for the past five years is sought.

Bond's arguments are without merit inasmuch as permitted discovery is broad and evidence of his financial wherewithal from the past five years to present is extremely relevant to determining whether he transferred any assets and, if so, to whom and for what consideration. Information dating back five years can also prove, *inter alia*, how any account is titled, where the initial contributions came from, his sources of employment, and any other source of any funds he may have. Simply put, this information can clearly lead to the discovery of admissible evidence and therefore is proper pursuant to the Federal Rules. Bond's request to have this discovery limited to any information concerning his financial assets and property for only *approximately the last three months* is nothing more than an attempt to prevent Adelberg Rudow from examining his full finances and to evade paying attorneys' fees for a frivolous suit he filed.

D.      Subpoena to Counsel

Bond has also incorporated his Motion to Quash Subpoenas to Counsel. Accordingly, Adelberg Rudow hereby adopts and incorporates its Opposition to Bond's Motion to Quash Subpoenas to Counsel and/or for Protective Order.

## CONCLUSION

Bond has put forth yet another attempt to delay the process by which he is obligated to pay the outstanding judgments against him. He attempts to confuse the issues and malign judgment creditor's counsel in order to delay and limit appropriate discovery. However, Adelberg Rudow's requests are valid topics for discovery, especially given the size of the award in favor of it. Bond has not put forth any valid reason why he is entitled to the requested relief. Accordingly, Adelberg Rudow requests that this Court deny Bond's Motion.

Respectfully submitted,

_____/s/_____
Andrew Radding (Bar No. 00195)
Michael R. Severino (Bar no. 25204)
Adelberg, Rudow, Dorf & Hendler, LLC
600 Mercantile Bank & Trust Bldg.
2 Hopkins Plaza
Baltimore, Maryland 21201-2927
410-539-5195

*Attorneys for Adelberg, Rudow, Dorf & Hendler, LLC*