IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

WILLIAM C. BOND,           *

      Plaintiff           *

     v.               *      Civil Action No.: MJG-01-CV-2600

KENNETH BLUM, SR., *et al.*,    *

      Defendants      *

*   *   *   *   *   *   *   *   *

**CONSOLIDATED REPLY TO JUDGMENT CREDITORS'
OPPOSITIONS TO THIRD PARTIES' MOTION
FOR RELEASE OF FUNDS FROM GARNISHMENT**

Third-Parties Howard J. Schulman and Schulman & Kaufman, LLC. ("the Firm"),

joined by Judgment Debtor, William C. Bond, in reply to Judgment Creditors'

Oppositions (Document Nos. 221 & 222), state:

**INTRODUCTION**

Everybody has received the appropriate notice required.  The fee agreements are

not contingent.  Moreover, not only are the services of Schulman & Kaufman, LLC in the

underlying case and the bank tort case interrelated and interdependent, the services in the

underlying action gave rise to and thereby produced the judgment to which the judgment

creditors now lay claim.  Without the services of Schulman & Kaufman, LLC in the

underlying action, there certainly would be no judgment.[1]  Therefore, pursuant to

---

[1]The Court of Special Appeals held that the issue the Court decided involved an
important question of public policy.  *See Bond v. Slavin*, 157 Md. App. at 353-54.

Maryland Business Occupations & Professions Article § 10-501, the Firm's lien has priority with regards to the judgment at issue.

**THE LIEN IS PERFECTED**

Judgment Creditors McDaniel, Bennett & Griffin and Adelberg, Rudow, Dorf & Hendler, LLC (collectively "Judgment Creditors") argue that the Firm is not entitled to its statutory lien, in part because the Judgment Creditors have not received notice in the manner described by Maryland Rule 2-652(b) ("An attorney…**may assert** the lien by serving a **written notice by certified mail or personal delivery**…) (emphasis supplied). *See* McDaniel Opposition, ¶ 1 (Document No. 221); Adelberg Opposition, ¶ 8 (Document No. 222).[2] Judgment Creditors do not assert that they did not have actual notice of the Firm's intent to assert the lien. Judgment Creditors do not do so because they had notice of the lien in underlying case as of August 14, 2003; and, as of March 19, 2004, had complete copies of virtually all of the billings in the underlying case. *See* Second Supplemental Affidavit of Howard J. Schulman, ¶¶ 3-5 (describing Judgment Creditors' actual notice of the lien). In addition, the Firm provided written notice that substantially complied with Maryland Rule 2-652 by virtue of the service of Paper Nos. 218, 219, and 220 via ECF to Judgment Creditors, as well as to the Bank of America, N.A., as reflected on the certificate of service in those documents, and to the Judgment Debtor. *See Sommer v. Rhoads,* ___ Md.App. ___, 2006 WL 3069704, *9-10, Slip Op. at 21-26 (filed October 31, 2006). Regardless, lack of notice under Rule 2-652 would not affect the validity of the lien; "[r]ather, [Business Occupations & Professions] section 10-501

---

[2]Judgment Creditors have collected at least $100,000 from Bond.

explicitly provides that the attorney 'has a lien…from the time the cause of action arises or the proceeding begins,' without any notice requirements." *Id.* at *9, Slip Op. at 22.

Judgment Debtor knows of and does not object to the lien advanced by the Firm. *See* attached Affidavit of William C. Bond.  The bank has not released the funds. *See Sommer*, 2006 WL 3069704, *10, slip op. at 24 n.11 & 25-26 (explaining that the purpose of Rule 2-652 notice is to protect stakeholders and satisfy due process so that client knows that the attorney is asserting the lien).  The Court of Special Appeals of Maryland has recently and explicitly rejected arguments similar to those advanced by the judgment creditors here. *Id.* at *9, Slip Op. at 22 (notice is not necessary under Rule 2-652 to perfect liens under § 10-501).  Nonetheless, specific notice complying with Rule 2-652(b) has been provided. *See* attached Affidavit of Daniel P. Doty.

**THE FEE AGREEMENTS WERE NOT CONTINGENT**

Judgment Creditors suggest, but do not explicitly argue, that if the agreements related to this case were contingent, they should not be enforced because they were not in writing, as required by Rule 1.5.  The fee agreements related to this matter, however, while partially in writing, were not contingent.[3]  In the underlying case, Bond owed a sum certain based on hourly billings and expenses.  It was not contingent on the outcome of the underlying case and, as of the time of trial in the bank tort case on September 15, 2006, the Bonds had paid $16,283.02 on the account.  In the bank tort case, the fee

---

[3] *See* Black's Law Dictionary 315 (7th ed. 1999) ("**contingent fee.** A fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court ● Contingent fees are usu. calculated as a percentage of the client's net recovery…").

arrangement was an hourly fee arrangement that was subject to a $10,000 cap because

Bond agreed to pay Schulman & Kaufman, LLC for its services and expenses in the

underlying case from whatever the Circuit Court awarded in the bank tort case for the

fees and expenses incurred in the underlying case.  This latter consideration was not

conditional, as it merely identified the award against the Bank of America, N.A. as the

source of payment, and Bond would owe the fees for the services in the underlying case,

even if there were no recovery.[4]  *See* Affidavit of Howard J. Schulman, ¶¶ 4-5 (Document

No. 218-2); Second Supplemental Affidavit of Howard J. Schulman, ¶¶ 6-7.  Thus, the

fee agreement in the bank tort case was not conditioned on a recovery nor on the amount

of recovery in that case.

**THE SERVICES OF THE LAW FIRM IN THE UNDERLYING CASE
PRODUCED THE AWARD OF ATTORNEYS' FEES AND EXPENSES IN THE
BANK TORT CASE AND THE TWO CASES WERE INTERRELATED**

Judgment Creditors appear to concede that the lien attached to the judgment to the

extent of the expenses incurred and services performed in the bank tort case.  *See*

McDaniel Opposition, ¶ 3 (Document No. 221); Adelberg Opposition, ¶ 11 (Document

No. 222).  Judgment Creditors' argument that the lien does not apply to the Court's

award in the bank tort case for services rendered in the underlying case, however, ignores

the plain language of the statute, which says that the lien attaches to "…(a)(2) a

settlement, judgment, or award that a client receives as a result of legal services…" if the

legal services "…(b)…produced the settlement, judgment, or award."  Giving the word

---

[4] Even if the Circuit Court were to reduce the award from the amount billed to
Bond in the underlying case, as it did, the award would still be the source of the payment.

"produced" its ordinary meaning,[5] the services in both the bank tort case and the

underlying case combined to "produce[] the…judgment…," because the judgment in the

bank tort case represents the attorneys fees, plus expenses, for services performed in the

underlying case. *See* Affidavit of Howard J. Schulman, ¶¶ 2-3 (Document No. 218-2);

*Sommer*, 2006 WL 3069704, *11, Slip Op. at 27-28 ("'[A]ttorney lien statutes are to be

regarded as remedial and should be liberally construed in aid of the object sought by the

legislature, which is to furnish security for attorneys for their efforts by giving them a lien

upon the subject of the action'") (citations omitted).

Judgment Creditors appear to argue that the lien is restricted to a particular case

number – § 10-501 contains no such restriction. Particularly given its remedial nature,

liberal construction, and purpose; *id*; a lien under § 10-501 extends to interrelated

cases.[6] Judge Messitte, in *VanGrack, Axelson & Williamowsky, P.C. v. Estate of Mehru*

---

[5] *See* Mirriam Webster's Dictionary("…**2** : to give birth or rise to…**5 a** : to cause to have existence or to happen … **b** : to give being, form, or shape to … **6** : to compose, create, or bring out by intellectual or physical effort **7** : to cause to accrue…"); *see also National Coalition For Students With Disabilities Educ. and Legal Defense Fund v. Allen,* 152 F.3d 283, 289 (4th Cir. 1998) ("We customarily turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning.") (citations omitted).

[6] The principal purpose of Bond's employment of the Firm was to obtain a protective order in the underlying case. Bond owes the Firm the amount of those fees, less payments on account and as reduced by the judgment in the bank tort case. The bank tort case grew out of the underlying case because it sought to recover the attorneys' fees and expenses incident to obtaining that protective order, and Bond owes additional monies in that regard. *See* Affidavit of Howard J. Schulman, ¶¶ 2-5 (Document No. 218-2).

*Abbasi,* 261 F.Supp.2d 352, 364 (2003), adopted this view, quoting 2 Robert L. Rossi,

*Attorneys' Fees* § 12:16, at 12-27 to 12-28 (3d ed.2001):

> In the absence of a statute, a charging lien generally extends
> only to fees and disbursements rendered in the particular
> action in which the judgment was recovered;  it does not
> cover any general balance that may be due the attorney from
> the client or charges for professional services rendered in
> other causes or transactions.   However, in certain
> circumstances the charging lien may extend to charges for
> fees or disbursement in suits incident to, or growing out of,
> the principal object of the employment.

In *VanGrack*, a law firm "asserted an attorney's charging lien against [funds recovered

from the Maryland Real Estate Commission] for services rendered to the Estate in

recovering the funds and possibly for services rendered in connection with other aspects

of the Estate's administration in the State of Maryland."  261 F.Supp.2d at 354.  The

Court, in accord with the Rossi treatise and persuasive case law, stated that the law firm

would be entitled to assert a lien for all of those services, provided that the services were

sufficiently interdependent, and indicated that it believed a single lien would be

appropriate.  *VanGrack,* 261 F.Supp.2d at 364.

Other authority construing similar statutory provisions are in accord with

*VanGrack* and Rossi.  *Cf. VanGrack,* 261 F.Supp.2d at 363 ("Although the Maryland

statute does not address all particulars of a charging lien, general authority on the subject

suggests its contours.")  As such, when there are multiple actions that "even though

theoretically separate, [are] in reality an integrated whole," the attorneys' lien is not

limited to the judgment in a particular action.  *Skelton v. Spencer,* 102 Idaho 69, 74

6

(1981) (*discussing In Re Abruzzo,* 139 Misc. 559, 249 N.Y.S. 72 (1931)).  For example,

where a lien for attorneys' fees from four lawsuits was asserted in an action to enforce a

settlement agreement that settled those lawsuits, the Supreme Court of Oklahoma held

that "the attorney's charging lien extended to all services which resulted in recovery of

the judgment."  *Edwards v. Adrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.,* 650

P.2d 857, 862 (1982).  The court explained:

> "…The attorney's lien attaches to the client's cause of action,
> and any recovery thereon, albeit the recovery is effected in an
> action other than the action in which the services were
> rendered.  ***This is especially so where the recovery is in an
> action which is a logical sequence of a prior action in
> connection with which the services were rendered***."

*Id.* (*quoting Neimark v. Martin,* 183 N.Y.S.2d 812, 7 A.D.2d 934 (1959)).

The Firm's services in both the underlying case and the bank tort case created the

fund at issue.  Section 10-501 accords priority to the attorneys whose services produced

such a fund; therefore, the portion of the judgment pertaining to the Firm's services in

both case numbers should be released from garnishment.

 

_____/s/_____
HOWARD J. SCHULMAN
Schulman & Kaufman, LLC
One Charles Center, Suite 600
100 N. Charles Street
Baltimore, Maryland 21201
(410) 576-0400
Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 27th day of November, 2006, a copy of the

Consolidated Reply to Judgment Creditors' Oppositions to Third-Parties Howard J.

Schulman and Schulman & Kaufman, LLC.'s Motion for Release of Funds Pursuant to

Maryland Business Occupations & Professions Article § 10-501 was e-mailed to Robert

S. Brennen, Esquire, Miles & Stockbridge, P.C., 10 Light Street, Baltimore, Maryland

21202-1487, attorneys for Garnishee Bank of America, N.A..


_____/s/_____
HOWARD J. SCHULMAN