| | | |
|---|---|---|
| WILLIAM C. BOND, *et ux.*, | * | IN THE |
| Plaintiffs | * | CIRCUIT COURT |
| v. | * | FOR |
| BANK OF AMERICA, N.A., *et al.*, | * | BALTIMORE CITY |
| Defendants | * | Case No.: 24-C-05-011210 |

\* \* \* \* \* \* \* \* \* \* \*

**AMENDED** COMPLAINT AND PRAYER FOR JURY TRIAL

Plaintiffs, William C. Bond and Alyson Bond, by their attorneys, Howard J. Schulman and Schulman & Kaufman, LLC, and David S. Goldberg, state:

COUNT I

(Bank of America, N.A. and Bank of America Corporation--Tort)

1. This case concerns a subpoena issued to the custodian and corporate designee of Defendant Bank of America (Defendant Bank of America, N.A. and/or Bank of America Corporation, sometimes hereinafter collectively referred to as the "Bank" or "Bank of America") to personally appear at 9:30 a.m. on February 18, 2003 in a hearing set in the Circuit Court for Baltimore City, Courthouse East, Family Division, Room 3, First Floor, 111 N. Calvert Street, Baltimore, Maryland 21202. The subpoena directed production in open court of the contents of any bank account records in the name of Alyson (Slavin) Bond held individually or jointly. Plaintiff Alyson Bond is the wife of Plaintiff William C. Bond. The Bank of America accounts, for which the records were subpoenaed, are also titled in the name of Plaintiff William C. Bond. Maryland Financial Code § 1-301 *et seq.* imposes upon Bank of America as a financial institution a

fiduciary duty towards the Bonds as its customers concerning disclosure of their financial records.

2.  Maryland Financial Institutions Code § 1-302 forbids banks and other fiduciary institutions, as defined by Maryland Financial Institutions Code § 1-301, from disclosing a customer's financial records, subject to certain specified exceptions. Among those limited exceptions, § 1-304 provides that a fiduciary institution may make disclosure pursuant to subpoena under certain conditions. A bank depositor in Maryland, as such, has a right to expect that a bank will, to the extent permitted by law, treat as confidential all information regarding his/her account and any transaction relating thereto. Absent compulsion by law, a bank may not make any disclosures concerning a depositor's account without the express or implied consent of the depositor. Banks may only produce or disclose financial information and records in compliance with § 1-304.

3.  Maryland Rule 2-510(a) provides that a subpoena may only be used to compel a person to attend a court proceeding to give testimony and produce documents at trial or deposition and specifically states that a subpoena may be used for no other purpose. "When a court issues a subpoena duces tecum requiring a custodian of financial records to 'personally appear and produce [financial records]' at a certain place on a certain date and time, the custodian cannot--without obtaining the permission of the person(s) whose financial records have been subpoenaed--produce those records at a different place on a different date. Such a subpoena 'does not... [permit] a delivery of the papers into the hands of the party calling for their production or of his counsel, or a submission of them to his examination.'"

2

4.  Plaintiffs had an expectation of privacy that their records would be confidential in accordance with the Maryland Financial Institutions Code § 1-301, *et seq.* On January 28, 2003, Caroline A. Griffin, attorney for William H. Slavin, Alyson Bond's former husband, served the subpoena in question in a domestic case. On or about February 13, 2003, however, the Bank turned over the records to Griffin *ex parte* in Baltimore City without the knowledge of Plaintiffs to Caroline A. Griffin and William H. Slavin. On February 13, 2003, Daniel Myers, a Bank of America legal support specialist, sent Alyson Bond a letter dated February 12, 2003 (post-marked February 13, 2003) advising her that the Bank had received a subpoena and that, if she objected, she should notify the Bank immediately if she intended to file a motion objecting to the subpoena. The Postal Service delivered the letter to Alyson Bond on Saturday, February 15, 2003.

5.  The courts in Baltimore City were closed on February 18 and 19, 2003 because of a blizzard, so the hearing did not take place. Before learning on February 21, 2003 that the Bank had turned the records over to Slavin's counsel, Plaintiffs personally and through counsel requested that the Bank not produce the subpoenaed records, pending the filing of a motion. On February 21, 2003, Myers wrote advising that the records had been produced within two business days prior to the scheduled hearing and that the Bank intended to continue production of any additional records that it might find. Also, on February 21, 2003, Myers sent a letter to Alyson Bond advising her of the particular account information that was provided to Slavin's counsel.

6.  Through counsel, Plaintiff William Bond requested that the Bank make no further production or release of any additional financial materials or banking records to

3

Slavin's counsel and that Griffin voluntarily return the records to either the Bank or William Bond or that she agree not to make any direct or indirect use of the records or the information contained therein for any purpose unrelated to the domestic litigation. Both the Bank and Griffin refused, and the Bank agreed with Griffin to continue its illegal production and release of banking records. Not only did the Bank not have the permission of the Bonds to disclose *ex parte* their banking records, but once on explicit notice of their objection to the Bank's doing so, it continued to make *ex parte* disclosures of the Bonds' financial records to Griffin and continued to do so between March 6, 2003 and June 20, 2003. The Bank, through its counsel, knew that Plaintiffs had particular concerns about the *ex parte* disclosure of the banking records to Griffin and Slavin; in fact, the Bank's counsel had knowledge of the long and vitriolic domestic litigation between Alyson Bond and Slavin and related litigation in which William Bond asserted that Griffin, Slavin and others purloined and misused his private papers.

7. Although William Bond, through counsel, attempted to resolve the matter without resorting to litigation, both the Bank and Griffin persisted in their conduct, which was illegal under Maryland Financial Institutions Code, §§ 1-302, 1-304 and 1-305. As a consequence, Mr. Bond, in order to enforce his rights under the Maryland Financial Institutions Code, was required to undertake circuit and appellate court litigation in order to enforce his legal rights. Bond filed motions in the Circuit Court for Baltimore City for (1) a protective order directing that Griffin place in the custody of the Court all original and other copies of the records obtained from the Bank of America of William C. Bond and directing that she not make any direct or indirect use of those

4

records or the information contained therein for any purpose unrelated to the domestic litigation; and (2) that the Bank of America be enjoined from any further *ex parte* production of the banking records. Slavin, Griffin and the Bank joined forces in opposing Bond's request for a protective order. Bond ultimately prevailed after the Court of Special Appeals of Maryland held that the Bank had no right to deliver the records to Griffin because "The Bank was required to bring the records into court, where (1) any person whose records had been subpoenaed would be entitled to ask the court to resolve claims of relevancy, privilege, or confidentiality, and (2) the court would have the authority to issue an order protecting the records from improper use." On remand, the Circuit Court for Baltimore City entered a protective order in Bond's favor. During the course of this litigation, Bond expended and incurred in excess of $80,000 in legal fees and expenses.

8. Both Bond and his wife Alyson suffered, among other things, depression, insomnia, loss of appetite, loss of weight and extreme nervousness and irritability as a consequence of their knowing of the Bank's *ex parte* production to persons who had sought their destruction. Plaintiff William Bond suffered, among other things, headaches and digestive problems. Both Plaintiffs were also consumed by fear and anguish, given the manner in which William Bond's private papers were taken and used without his permission and employed as a weapon against both him and Mrs. Bond.

9. The Bank acted in accordance with an established and systematic policy of violating the Maryland Financial Institutions Code § 1-304 and similar laws of other states by producing and disclosing *ex parte* its customers' financial records outside the

5

directives of subpoenas and appropriate legal procedure, such as that provided by Maryland Financial Institutions Code § 1-304 and Maryland Rule 2-510. The Bank was a fiduciary under the Maryland Financial Institutions Code but, instead of acting as a fiduciary, the Bank purposefully disobeyed the subpoena and then turned against its own customer and sided with Plaintiffs' enemies that it knew acted with ill will, spite and hatred towards Plaintiffs. The Bank's agent, servant and employee, Daniel Myers, was arrogant, condescending and angry (exhibiting ill-will and spite) when he told William Bond over the telephone on or about February 21, 2003 that the Bank would continue to produce his financial records to Griffin. Plaintiffs, therefore, aver that the conduct of the Bank of America and Myers was not only purposefully illegal, but that both acted with ill will, spite and hatred towards the Plaintiffs.

10. As a proximate consequence of Defendant Bank of America's breach of its duty not to make *ex parte* disclosure to Griffin and Slavin, Plaintiffs incurred and paid attorneys' fees, legal expenses and costs associated with obtaining the protective order entered against Griffin and Slavin; and Plaintiffs were also proximately caused to suffer and endure mental and physical distress, fear and anguish.

WHEREFORE, Plaintiffs, William C. Bond and Alyson Bond, demand judgment in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) plus punitive damages in the amount of One Million Dollars ($1,000,000.00) against Defendant Bank of America, N.A. and Defendant Bank of America Corporation.

## COUNT II (Daniel Myers-Tort)

11. Plaintiffs incorporate by reference all of those relevant allegations

contained in Count I and further say that Defendant Myers aided, abetted and facilitated other still unknown agents, servants and employees of Bank of America in the purposeful and illegal release of Plaintiffs' financial records and knowingly and willfully did disclosed Plaintiffs' financial records in violation of Maryland Financial Code § 1-301 et seq.; and thereby Defendant Myers violated Maryland Financial Code **§ 1-302 &** § 1-305(a).

12. As a proximate consequence of Defendant Myers' violation of Maryland Financial Code **§ 1-302 &** § 1-305(a), **and aiding and abetting the Bank's violation of Maryland Financial Code § 1-302** and other conduct, Plaintiffs incurred and paid attorneys' fees, legal expenses and costs associated with obtaining the protective order entered against Griffin and Slavin; and Plaintiffs were also proximately caused to suffer and endure mental and physical distress, fear and anguish.

WHEREFORE, William C. Bond and Alyson Bond, demand judgment in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) plus punitive damages in the amount of One Hundred Thousand Dollars ($100,000.00) against Defendant, Daniel Myers.

<u>COUNT III (Bank of America--Breach of Contract)</u>

13. Plaintiffs incorporate by reference all of those relevant allegations contained in Count I and further say, in the alternative, that Bank of America breached its deposit agreement and disclosure agreement with Plaintiffs by failing to comply with the subpoena and, instead, providing the records *ex parte* to Caroline A. Griffin; and, as a consequence thereof, Plaintiffs were damaged by having to incur attorneys' fees and

7

other legal expenses to obtain a protective order.

WHEREFORE, William C. Bond and Alyson Bond demand judgment in the amount of Ninety Thousand Dollars ($90,000.00) against Defendant Bank of America, N.A. and Defendant Bank of America Corporation.

### COUNT IV (Caroline A. Griffin)

14. Plaintiffs incorporate by reference all of those relevant allegations contained in Count I and further say, Defendant Griffin knowingly and willfully induced Myers, an employee and agent of a "fiduciary institution", to disclose financial records in violation of Maryland Financial Code § 1-301 *et seq.;* and, Defendant Griffin thereby violated Maryland Financial Code § 1-305(b) **and aiding and abetting the Bank's and Myers' violation of Maryland Financial Code § 1-302**.

15. By letter dated March 3, 2003, Griffin declined to return the banking records and threatened to seek sanctions and otherwise requested the Bank of America to continue the *ex parte* production of the Plaintiff's records to her. In doing so, Griffin was motivated by ill-will, spite and hatred of the Plaintiff William Bond, because he had previously accused and sued her for being involved in the purloining of his private papers from his deceased lawyer's papers.

16. At all times relevant hereto, Defendants, Caroline A. Griffin was a partner in the firms, McDaniel, Bennett & Griffin and McDaniel & Griffin.

17. As a proximate consequence of Defendant Griffin's violation of Maryland Financial Code § 1-305(b) **and aiding and abetting the Bank's and Myers' violation**

8

**of Maryland Financial Code § 1-302**, Plaintiffs incurred and paid attorneys' fees, legal expenses and costs associated with obtaining the protective order entered against Griffin and Slavin; and Plaintiffs were also proximately caused to suffer and endure mental and physical distress, fear and anguish.

WHEREFORE, Plaintiffs, William C. Bond and Alyson Bond, demand judgment in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) plus punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00) against Caroline A. Griffin, McDaniel, Bennett & Griffin and McDaniel & Griffin.

### COUNT V (William H. Slavin)

18.     Plaintiffs incorporate by reference all of those relevant allegations contained in Counts I and IV and further state that Defendants Caroline A. Griffin, McDaniel, Bennett & Griffin and McDaniel & Griffin were the agents, servants and employees of Defendant William H. Slavin.

19.     At all relevant times, Defendant William H. Slavin was motivated by ill will, spite and hatred of Plaintiffs William Bond and Alyson Bond as a consequence of and during the domestic litigation.

WHEREFORE, Plaintiffs, William C. Bond and Alyson Bond, demand judgment in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) plus punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00) against William H. Slavin.

### COUNT VI

**20.     Plaintiffs incorporate by reference all of those relevant allegations**

contained in Count I and further say that the *ex parte* disclosure in question here gives rise to a claim for invasion of their rights to privacy.

21. As a proximate consequence of Defendant Bank of America's invasion of Plaintiffs' rights to privacy by making disclosure to Griffin and Slavin, Plaintiffs incurred and paid attorneys' fees, legal expenses and costs associated with obtaining the protective order entered against Griffin and Slavin; and Plaintiffs were also proximately caused to suffer and endure mental and physical distress, fear and anguish.

WHEREFORE, Plaintiffs, William C. Bond and Alyson Bond, demand judgment in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) plus punitive damages in the amount of One Million Dollars ($1,000,000.00) against Defendant Bank of America, N.A. and Defendant Bank of America Corporation.

## COUNT VII

22. Plaintiffs incorporate by reference all of those relevant allegations contained in Counts I, II and VI and further say that Defendant Myers aided, abetted and facilitated other still unknown agents, servants and employees of Bank of America in the invasion of Plaintiffs' rights to privacy and otherwise participated therein.

23. As a proximate consequence of Defendant Myers' aiding and abetting the Bank's invasion of Plaintiffs' rights of privacy and otherwise participating therein, Plaintiffs incurred and paid attorneys' fees, legal expenses and costs associated with obtaining the protective order entered against Griffin and Slavin;

and Plaintiffs were also proximately caused to suffer and endure mental and physical distress, fear and anguish.

WHEREFORE, Plaintiffs, William C. Bond and Alyson Bond, demand judgment in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) plus punitive damages in the amount of One Hundred Thousand Dollars ($100,000.00) against Defendant Daniel Myers.

## COUNT VIII

24. Plaintiffs incorporate by reference all of those relevant allegations contained in Counts I, IV and VI and further say that Defendant Griffin aided, abetted and participated in the invasion of Plaintiff's rights to privacy.

25. As a proximate consequence of Defendant Griffin's aiding and abetting the Bank's and Myers' invasion of Plaintiffs' privacy and otherwise participating therein, Plaintiffs incurred and paid attorneys' fees, legal expenses and costs associated with obtaining the protective order entered against Griffin and Slavin; and Plaintiffs were also proximately caused to suffer and endure mental and physical distress, fear and anguish.

WHEREFORE, Plaintiffs William C. Bond and Alyson Bond demand judgment in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) plus punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00) against Defendants Caroline A. Griffin, McDaniel, Bennett & Griffin and McDaniel & Griffin.

## COUNT IX

26. Plaintiffs incorporate by reference all of those relevant allegations contained in Counts I, II, VI and VIII and further say that Defendants Caroline A. Griffin, McDaniel, Bennett & Griffin and McDaniel & Griffin were the agents, servants and employees of Defendant William H. Slavin when they aided, abetted and participated in the invasion of Plaintiffs' rights to privacy.

WHEREFORE, Plaintiffs William C. Bond and Alyson Bond demand judgment in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) plus punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00) against Defendant William H. Slavin.

_____
Howard J. Schulman
SCHULMAN & KAUFMAN, LLC
One Charles Center, Suite 600
100 N. Charles Street
Baltimore, Maryland 21201
(410) 576-0400

_____
David S. Goldberg
Executive Plaza III, Suite 800
11350 McCormick Road
Hunt Valley, Maryland 21031
(410) 229-0193

Attorneys for Plaintiffs

12

## PRAYER FOR JURY TRIAL

Plaintiffs pray to have their case tried by a jury.

_____
Howard J. Schulman

_____
David S. Goldberg

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of April, 2006, copies of Plaintiffs' Amended Complaint and Prayer for Jury Trial were mailed first-class, postage prepaid, to Jefferson V. Wright, Esquire, Robert S. Brennen, Esquire and Todd M. Reinecker, Esquire, Miles & Stockbridge, P.C., 10 Light Street, Baltimore, Maryland 21202-1487, attorneys for Defendants, Caroline A. Griffin, McDaniel, Bennett & Griffin and McDaniel & Griffin; and to William F. Ryan, Jr., Esquire, and Amy E. Askew, Esquire, Whiteford, Taylor & Preston, LLP, 7 St. Paul Street, Baltimore, Maryland 21202, attorneys for Defendants, Bank of America, N.A., Bank of America Corporation and Daniel Myers.

_____
Howard J. Schulman

13