IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM C. BOND, | * | |
| Plaintiff *Pro Se* | | |
| v. | * | Civil Action No.: MJG-01-CV-2600 |
| KENNETH BLUM, SR., et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \*

**RENEWED MOTION TO RECUSE AND MOTION FOR CASE TO BE SPECIALLY ASSIGNED TO A VISITING JUDGE OR THAT THE COURT GRANT A CHANGE OF VENUE**

Now comes Plaintiff *Pro Se* William C. Bond pursuant to 28 U.S.C., § 455, and states:

1. Plaintiff incorporates his Motion and Memorandum in Support of Motion for Fed. Civ. R. P. Rule 60 (b) Relief from Judgment or Order.

2. On or about March 7, 2003, Plaintiff, through counsel, filed a Motion to Recuse (Exhibit #1, excluding the exhibit *Bond v. Messerman et al,* except cover page, which is attached, in its entirety, to the Memorandum in Support of Motion for Fed. Civ. R. P. Rule 60 (b) Relief from Judgment or Order) which was answered by Judge Garbis (Exhibit #2). Plaintiff incorporates that Motion and its Exhibits and further states:

3. 28 U.S.C. 455 is self-acting. Plaintiff was unaware of Judge Garbis's intimate personal relationship with Gerald A. Messerman and law partner relationship with Gerard P. Martin until after the Copyright Case hearing on November 20, 2001. Plaintiff alleges and avers that Judge Garbis maliciously hid these relationships, and other still undiscovered information at this time, from Plaintiff and his counsel in order to sabotage Plaintiff's Case, including the denial of Plaintiff's Due Process rights in his own property so that the Judge could award Attorney's Fees to the Defendants. Plaintiff has alleged that Judge Garbis's conduct in this Case constitutes a "Fraud Upon the Court."

4. At oral argument on November 20, 2001 before Judge Garbis in the underlying Copyright TRO Hearing, witness Robert N. Grossbart, Esq., disputed that he ever had a three-way conversation between himself, Plaintiff, and Gerald A. Messerman, Esq., of Cleveland, Ohio, and whether that conversation was privileged? ( Exhibit # 3). Those statements were in response to questioning of Plaintiff by defense counsel regarding letters produced and put into the Court's Record by Plaintiff's counsel regarding communications between, Plaintiff, Messerman, and Robert N. Grossbart. (Exhibit # 4). Messerman knew it was very possible he would soon be sued by Plaintiff for legal malpractice from his conversations with Plaintiff and with Plaintiff's attorney, Richard M. Karceski. Grossbart's testimony made Messerman a material witness at Trial, where he would have been subjected to questioning, including his malpractice and ethical mistakes committed against Plaintiff during representation in Ohio as a juvenile. Messerman was Judge Garbis' college room mate at Georgetown University as well as his self-proclaimed "mentor." Messerman had been told by Plaintiff for months leading up to the Copyright Case that his testimony and his files on Grossbart would be needed Trial.

5. Not only did Plaintiff ultimately sue Gerald A. Messerman (Exhibit # 1), but Plaintiff also filed an extensive ethical complaint against messerman to the Office of Disciplinary Counsel of the Supreme Court of Ohio.

6. The Rules provide that a Judge should avoid even the perception of impartiality. Full disclosure is a must. <u>Although Judge Garbis made a brief and self-serving reference to Gerald A. Messerman in the Federal TRO Motion Hearing **at the end of the Hearing while making his Ruling**, he failed to disclose that he had been college room mates with Mr. Messerman at Georgetown University, that they had traveled and entertained each other, and that they had worked on cases together later on in life. Judge Garbis also failed to disclose that he had been a law partner with defense counsel Gerard P. Martin.</u> (Exhibits # 2 & 5). Further, all these disclosures should have taken place either when Judge Garbis was assigned the case or when the Messerman letters came into evidence. Judge Garbis' above statements at the end of a one day hearing are wholly unacceptable and illegal under 28 U.S.C. 455 (e).

7. Not only should Judge Garbis have immediately recused himself from the case, once he heard Messerman's name and realized that he would be a material witness at Trial, under 28 U.S.C. 455 (a) & (b)(1), (b)(2), but he also violated the Code of Conduct for US Judges, Canon number 2, Maryland Rule 16-813, Canon 2, and ABA Judicial Canon 2, as well. Judge Garbis' Reply to Recusal focuses only on 455 (a), while ignoring 455 (b) in its entirety. Judge Garbis's Reply arrogantly appeared to invite anyone he has ever known to practice before him as well, clearly losing sight that although recusal is self-acting, it is not for the Judge's well-being, but for the Public's. Judge Garbis never answered the room mate allegation, or any of the others made. In

this case, Plaintiff intends to seek Discovery as to all contacts between Messerman and Judge Garbis, which surely will be more than the "once every five years" that Garbis claims and will also show more than "one social interaction." (Exhibit # 2).

8. Plaintiff would argue, additionally, that Judge Garbis violated 28 U.S.C. 455 (b)(5)(i),(iii), & (iv). To men of Judge Garbis' generation, a college room mate may be emotionally more important than a spouse, as many of these men from this generation have had multiple wives. Plaintiff knows of many men of this generation for whom this type of relationship is paramount.

9. Clearly, Judge Garbis was utterly dishonest in his Reply to Plaintiff's first Motion to Recuse, and what should have been an ethically self-activating action by the Judge under 28 U.S.C. 455 (e). In fact, Judge Garbis proves Plaintiff's point on page (2) two of his Answer to Recusal (Exhibit # 2), stating, "When assigned this instant case in August of 2001, I noted that Plaintiff's criminal counsel in Cleveland had been Mr. Messerman. **This fact was of no moment to me whatsoever**." (Emphasis added.). <u>Further, Plaintiff wonders how Judge Garbis was even aware of Messerman being Plaintiff's Juvenile Counsel in August of 2001 when Plaintiff's Complaint made no mention of it?</u> This is a very great question for the Judge to answer.

10. Regardless, the fact that he mentions it as being of "no moment whatsoever" means that it crossed his mind, therefore, under 28 U.S.C. 455, the information Judge Garbis possessed on Messerman certainly should have crossed his lips under "full disclosure." There can be no other interpretation. Plaintiff adamantly states that he would have acted and requested a Recusal from the Judge on the spot had he known the information Judge Garbis kept to hidden and to himself.

11. This is the gravamen of Plaintiff's compliant regarding Judge Garbis, that Judge Garbis knew well in advance of a potential question of impartiality and not only made no disclosure **on the record** as provided in 28 U.S.C. 455 (e), he continued to hide what to any reasonable person would be considered a severe challenge to impartiality. This continued resistance and denial of obvious conflict is very compelling circumstantial proof and causes any reasonable person to infer other unethical behavior. Plaintiff is positive that further Discovery into Judge Garbis' relationships concerning this case will reveal more troubling facts.

12. Plaintiff alleges and avers that Discovery will show that Garbis has ignored ethical Canons in the past, has had Complaints made about his Judicial Conduct, and has come to the attention of the Authorities and the Court for his behavior. (Exhibit # 6)

13. On July 15, 2004, Plaintiff made a criminal referral to the US Attorney for Maryland about the actions of Defendants and Witnesses in the underlaying Copyright Case, and about whether Judge Garbis was inappropriately influenced in reaching his decision by Gerald A. Messerman Esq., and/or Gerard P. Martin Esq., and/or others unknown.

14. Plaintiff met with a high ranking official of the US Attorney's Office twice in the fall of 2004 and communicated in writing many more times. Plaintiff was led to believe that the US Attorney's Office believed Plaintiff's claims and that they would prosecute the wrong doers. Plaintiff was told that "You know they talked," in reference to Judge Garbis and Messerman communicating about Plaintiff and his Action before Judge Garbis. The US Attorney's Office specifically told Plaintiff that a Change of Venue would be necessary because of the parties

association with the Federal Court.

15. On February 8, 2007, Plaintiff made a Freedom of Information Request (FOIA) to the US Attorney's Office for Maryland and the DOJ in Washington regarding the results of the above referral.

16. On April 12, 2007, The DOJ denied Plaintiff's FOIA Appeal regarding his third party requests, initiating a forthcoming FOIA Complaint to this Court regarding the US Attorney's investigation into Plaintiff's referrals, including those against Judge Garbis.

17. On March 22, 2007, Plaintiff made a FOIA Request to the Chief Judge of the US District Court for Maryland for Judge Garbis's US Government funded telephone and other communications records during the times in question and the "Bromwell" Motions disqualifying the attorneys in that Case, including Gerard P. Martin.

18. On April 9, 2007, Plaintiff was informed by the US Attorney's Office, Chief, Civil Division, that Plaintiff's request to this Court was referred to them and that they were putting this request through DOJ's request mechanism. Plaintiff, at this time, is unsure if the US Attorney is actually representing this Court in this matter, but concludes that the way this matter is being handled, i.e., the US Courts are not part of DOJ, is sure to generate another FOIA Complaint to this Court.

19. Defendant Dudley F. B. "Butch" Hodgson was a licensed private investigator during the times of the underlying Copyright Case. Before that, he was US District Judge Richard Bennett's

lead investigator in the U.S. House of Representatives investigation of Bill Clinton. Before that, he was a top FBI official. In the underlying case, among many improprieties, Hodgson was able to get former US Attorney Jervis Finney to release documents to Hodgson from the contents of a deceased client of Finney's file, which is clearly a serious ethical violation. Hodgson and his reputation are well known among the Federal Bar.

20. It is anticipated that former US Attorney Thomas M. DiBiagio, present US Attorney Rod J. Rosenstein, his Chief, Criminal Division, Barbara S. Sale, and two ASUA's known only as John/Jane Doe will be deposed in this case.

21. Gerard P. Martin, Esq., is a former ASUA, former partner to Judge Garbis, a member/former member of the Standing Committee on Ethics to the MSBA, and currently under scrutiny for his conduct in the "Bromwell Case."

22. Given all the above, and the fact that the US Judges are a "fraternity" who regularly sit together in groups at non Court functions (Exhibits # 7 & 8), it is highly unlikely that Judge Garbis or any US District Judge currently, or formerly, on the bench for the US District Court for Maryland could be impartial in matters relating to William C. Bond.

23. Therefore, this Court should specially assign this case, and all related actions, to a visiting Judge who has no associations with this Court, the Maryland Bar, or the current US Attorney's Office and DOJ fiasco now going on in Washington, D.C.

24. In the alternative, Plaintiff asks this Court to Change the Venue to Washington, D.C.

25. Plaintiff asks the Chief Judge of this Court to Rule on this Motion and his Motion for Temporary Restraining Order until a Specially Assigned Judge may be appointed to this Case or the Venue is Changed.

For the many reasons stated above, Judge Garbis' past and future impartiality might reasonably be questioned, given Judge Garbis' association with Mr. Messerman and Plaintiff's allegations against Judge Garbis, Messerman, and Martin. And for the reasons stated above, as well, that the Judges of the US District Court, past and present, might reasonably be questioned as to their ability to be impartial.

WHEREFORE, for the aforementioned reasons and those stated in the attached materials, Plaintiff respectfully requests that Judge Garbis recuse himself, or be recused, from further proceedings in this matter and to any other matter, present or future, involving William C. Bond. Further, Plaintiff respectfully requests that this case be Specially Assigned to a visiting Judge, or, in the alternative, that the Court Grant a Change of Venue to Washington, D.C. Plaintiff asks the Chief Judge to of this Court to Rule on this Motion and his Motion for Temporary Restraining Order until a Specially Assigned Judge may be appointed to this Case or the Venue is Changed.

_____
WILLIAM C. BOND
*Pro Se*
309 Suffolk Road

Baltimore, Maryland 21218
(410) 243-8152

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of April, 2007, copies of Plaintiff's Motion to Recuse were mailed FedEx, postage prepaid, to William F. Ryan, Jr., Esquire, Amy E. Askew, Esquire, Whiteford, Taylor & Preston, LLP, Suite 1400, 7 St. Paul Street, Baltimore, Maryland 21202-1626, attorneys for McDaniel, Bennett & Griffin; Gerard P. Martin, Esquire, Thy C. Pham, Esquire, Rosenberg, Martin, Funk & Greenberg LLP, 25 South Charles Street, Suite 2115, Baltimore, Maryland 21201-3322, attorneys for Defendants, Dudley F. B. Hodgson, Kenneth Blum, Sr. and Kenneth Blum, Jr.; Andrew Radding, Esquire, Michael R. Severino, Esquire, Adelberg, Rudow, Dorf & Hendler, LLC, 600 Mercantile Bank & Trust Building, 2 Hopkins Plaza, Baltimore, Maryland 21201-2927, attorneys for Defendant, Adelberg, Rudow, Dorf & Hendler, LLC; and Kathryn Miller Goldman, Esquire, Jiranek, Goldman & Minton, LLC, Suite 401, 19 E. Fayette Street, Baltimore, Maryland 21202-3316, attorneys for William Slavin.

WILLIAM C. BOND