**EXHIBIT # 5**

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

WILLIAM C. BOND,

    Plaintiff,

v.                                                                                    Case No. 260498-V

MIRIAM S. PESSIN,

    Defendant.

## MEMORANDUM OPINION

This case involves a dispute between Plaintiff William C. Bond and Defendant Miriam S. Pessin over a manuscript copy of Plaintiff's book, <u>Self-Portrait of a Patricide: How I Got Away With Murder</u>, in which Plaintiff describes how, at age seventeen, he avoided criminal culpability for, and even profited from, the intentional murder of his father. On April 20, 2004, Plaintiff filed a seven count[1] complaint against Miriam S. and David N. Pessin, alleging negligence, conversion, breach of fiduciary duty, unreasonable publicity given to private life, and legal malpractice.[2]

Presently before this Court is Defendant's Motion for Summary Judgment filed herein at docket entry #44. Plaintiff's Opposition is filed herein at docket entry #59. Pursuant to Maryland Rule 2-311(e), a hearing was held on the issues raised in these motions on November 1, 2006, and these matters were taken under advisement. After a careful examination of the parties' motions, the parties' briefs, the trial transcript and the relevant law, the Court finds that there are no material facts in dispute, and Defendant is entitled to judgment as a matter of law.

---

[1] Plaintiff only made four claims against Defendant Miriam S. Pessin: negligence, conversion, breach of fiduciary duty, unreasonable publicity given to private life. The remaining counts applied to dismissed Defendant David N. Pessin.

[2] Currently, only the conversion claim, failed against Miriam S Pessin, remains.

1

## BACKGROUND

Plaintiff, Mr. Bond, has previously pursued a cause of action for copyright infringement based on the same operative facts as are presented in this case. The United States Court of Appeals for the Fourth Circuit described the facts as follows:

> In the child-custody case of Slavin v. Slavin, commenced in July 2000 and pending in the Circuit Court for Baltimore City, Case No. 95249006/CE 201677, Alyson Slavin Bond sued her former husband, William Slavin, for exclusive custody of their three children. William Slavin filed a cross-petition for exclusive custody and, in support of his position, introduced into evidence an autobiographical manuscript written by Alyson's current husband, William Bond, to establish that the home of Alyson and William Bond would not be a suitable place for the three children. Bond's manuscript was entitled Self-Portrait of a Patricide: How I Got Away with Murder.
>
> In June 1981, when William Bond, who was formerly known as William Rovtar, was 17, he beat his father to death with a hammer in his grandparents' garage in Bainbridge Township, Ohio. After Rovtar was arrested and detained in a juvenile detention facility in Ohio, he entered into a guilty-plea agreement in juvenile court with the result that in September 1981 he was transferred to the Sheppard & Enoch Pratt Hospital in Baltimore, Maryland, for psychological treatment. Rovtar was released in 1982, and after his release, he legally changed his name to William Bond. He remained in Maryland and thereafter became employed as a tennis instructor at a country club, a bicycle salesman, and a bodyguard, among other things.
>
> In 1987, Bond began to write Self-Portrait of a Patricide: How I Got Away with Murder, "the true story of and by William Bond," which he hoped to market to publishers for profit. The manuscript describes in horrific detail how Bond planned and committed the murder of his father with a hammer, and how his dying father attempted to raise himself off the floor of the garage before Bond delivered the final blows to his neck and head. It describes Bond wiping away his fingerprints, scrubbing the garage floor, cleaning blood, flesh, and bone from his clothes, and stuffing his father's dead body in his car's trunk. Most sinister of all, it depicts a remorseless individual who brags about fooling the police and the juvenile system to "get away scot-free" and even collecting, as planned, the money from his father's estate. Although verifiable facts of the murder are consistent with the details provided in the manuscript, Bond has now stated in an affidavit that the manuscript is "a highly fictionalized and stylized work," based on his "juvenile experience." Bond circulated his manuscript directly and through agents in order to find a publisher, asking for a seven-figure advance. His efforts, however, were unsuccessful. After some revisions, Bond also gave a copy of the

manuscript to Norman Pessin, an attorney who had represented Bond in various unrelated matters, to help him get the manuscript published, but his efforts, too, failed. Although Pessin thereafter died, his widow retained a copy of the manuscript.

Bond met Alyson Slavin in early 1995, after Alyson was separated from her husband, William Slavin. Bond and Alyson continued to see each other until they married in May 2001. In 1996, shortly after Bond and Alyson met, Bond wrote a lengthy letter to Alyson's father, Kenneth Blum, Sr., indicating that he intended to marry Alyson and become the stepfather of her children. The letter offered an analysis of individual members of Blum's family and purported to offer "solutions" to correct perceived deficiencies in the Blum-Slavin extended family. In addition, the letter set forth an expansive financial plan, pursuant to which Bond demanded from Blum a dowry, a salary, establishment of an investment account, purchase of a studio apartment in addition to a house, and a severance package should Bond's marriage with Alyson not work out. Bond stated to Blum, "You can pay me now or pay me later." In this letter, Bond also made reference to his personal history, stating that he "had a past," and that, although it was "none of [Blum's] business," it makes "interesting reading."

Blum not only found this letter very disconcerting, considering it to be an attempt to extort money from him, but he also became concerned for the safety of Alyson and her children. In June 2000, just before the state custody action was commenced, Blum hired a private investigator, Dudley F.B. Hodgson, to look into Bond's background. At their first meeting, Blum gave Hodgson an overview of his dealings with Bond and expressed his concern over both the safety of his grandchildren and Bond's effort to "shake him down" for money. Blum gave Hodgson a copy of the letter that Bond had sent him and told Hodgson that he had heard that Bond may have had some problems with his family involving violence in Ohio.

In the course of his investigation, Hodgson learned about the murder of Bond's father and contacted the Bainbridge, Ohio police department, obtaining copies of the police report and other documents relating to the homicide investigation. Hodgson reported these findings to Blum, and at Blum's request, Hodgson went to the home of Miriam Pessin, the widow of Norman Pessin, believing that Bond had also tried to "shake Pessin down" for money before he died. When Hodgson interviewed Miriam Pessin in April 2001 and asked her if she had any information that would be helpful in his investigation of Bond, she told Hodgson that she did have, stored in a box, a loose-leaf copy of a manuscript that Bond authored. Mrs. Pessin stated that Bond had given a copy of the manuscript to her husband for him to read for the purposes of locating a publisher. She later testified that this box of materials was not part of Pessin's legal files, which he carefully kept separate, and that Bond had also given her portions of the manuscript to read. Not wanting to retain the manuscript in her home, Mrs. Pessin gave it to Hodgson. Hodgson made a copy of the manuscript and gave copies to Alyson's ex-husband, William Slavin,

3

and the attorneys representing him in the state custody action. William Slavin's attorneys made the manuscript an exhibit during the deposition of Alyson in July 2001 and intended to make it a part of the custody litigation in the Circuit Court for Baltimore City, in which a hearing was scheduled for December 10, 2001. For the sole purpose of preventing further use of the manuscript in the proceedings before the Baltimore City Circuit Court, Bond registered a copy of his manuscript with the Copyright Office in August 2001.

Immediately after registering the manuscript, Bond commenced this action for copyright infringement, naming as defendants Blum, Blum's son, Hodgson, William Slavin, and Slavin's attorneys. He requested a preliminary and permanent injunction prohibiting the use of the manuscript by the defendants for any purpose and requiring the return of all existing copies.

At the hearing on Bond's motion for a preliminary injunction, the district court heard testimony from Alyson Bond, Blum, Hodgson, and Mrs. Pessin, among others. Following the hearing, the court found that Bond had written the manuscript and had delivered it to Pessin and others in an effort to get it published. The court found that Pessin's efforts to get the book published were not part of Pessin's legal practice, because he wasn't doing this as a lawyer. The court concluded that the document was not a confidential document in any kind of privileged sense. In addition, the court found that Hodgson did not steal the document but was given the document by Pessin's wife.

Bond v. Blum, 317 F.3d 385, 390-392 (4th Cir. 2003). The Fourth Circuit affirmed the District Court's granting of summary judgment, holding that William Slavin's use of the manuscript was a fair use as a matter of law. Judgment entered in favor of all defendants, and defendants were awarded attorneys fees.[3]

Plaintiff filed suit against Defendant on April 20, 2004, in the Circuit Court for Baltimore City, alleging against Defendant Miriam Pessin the claims of Negligence, Conversion, Breach of Fiduciary Duty and Unreasonable Publicity Given to Private Life.[4] Upon Defendant's motion to dismiss, the Circuit Court for Baltimore City dismissed Count IV of Plaintiff's Complaint,

---

[3] The district court awarded attorneys fees, under 17 U.S.C. § 505, to the individual defendants but not to the law-firm defendants because the law firms were represented by a member of the firm and thus were acting pro se. The Fourth Circuit held that the prohibition against awarding pro se litigants attorneys fees did not apply, and remanded the case to the district court for consideration of whether attorneys fees should be awarded to the law firm defendants. Bond v. Blum, 317 F.3d 385, 400 (4th Cir. 2003).

[4] Plaintiff also sued David N. Pessin, Defendant's deceased husband. The Circuit Court for Baltimore City dismissed the claims against Mr. Pessin.

4

Unreasonable Publicity Given to Private Life. On April 12, 2005, in response to Defendant's Renewed Motion to Dismiss for Improper Venue, the Circuit Court of Baltimore City transferred this case to the Circuit Court for Montgomery County.

On February 1, 2006, this Court heard arguments on Defendant's Motion for Summary Judgment. This Court partially granted Defendant's motion, granting summary judgment in Defendant's favor as to Counts I and II of Plaintiff's complaint. This decision left one count remaining: conversion. Defendant now renews her motion in regards to this count, and provides additional arguments in support of her motion.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Maryland Rule 2-501. It instructs that:

> The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Rule 2-501(f). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." King v. Bankerd, 303 Md. 98, 111 (1985).

"The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact, which is sufficiently material to be tried." Jones v. Mid-Atlantic Funding Co., 362 Md. 661 (2001). "[O]nce the moving party has provided the court with sufficient grounds for summary judgment, the nonmoving party must produce sufficient evidence to the trial court that a genuine dispute of a material fact exists." Id. at 676.

On a motion for summary judgment, the evidence, including all inferences therefrom, is viewed in the light most favorable to the nonmoving party. Natural Design, Inc. v. Rouse Co.,

302 Md. 47, 62 (1984). If the facts presented to the trial court on a motion for summary judgment are susceptible to more than one inference, the inferences must be drawn in the light most favorable to the person against whom the motion is made, and in the light least favorable to movant. James v. Tyler, 269 Md. 48, 53 (1973) (quoting Lipscomb v. Hess, 255 Md. 109, 118 (1969)).

### DEFENDANT'S ARGUMENT

Defendant moves for summary judgment on Count II of Plaintiff's Complaint (Conversion), which is the single remaining count in this case. Essentially, Defendant argues that, as a matter of law, Plaintiff is precluded from recovering any of the damages he requests in this suit.

Generally, Defendant argues that Plaintiff only requests consequential damages in this action, and that consequential damages are not available for the tort of conversion. Specifically, Defendant argues that Plaintiff is not entitled to consequential damages for the legal costs he incurred in bringing his copyright suit in the United States District Court for the District of Maryland, which was found to be frivolous by that Court. Next, Defendant argues that Plaintiff is not entitled to consequential damages for the legal costs of this case, under the American rule. Additionally, Defendant argues that Plaintiff is not entitled to "reputational" damages or damages for emotion distress as a result of Defendant's alleged conversion. Finally, Plaintiff argues that Bond is not entitled to punitive damages in this case.

### PLAINTIFF'S OPPOSITION

Primarily, Plaintiff argues that most of Defendant's arguments have been heard and denied by this Court and the Circuit Court for Baltimore City previously, and should therefore

summarily be denied. As to the substantive issues, Plaintiff concedes that he seeks only consequential damages, stating that he has established a prima facie case of conversion, and for compensatory damages and punitive damages which must be presented to and decided by a jury. Further, Plaintiff argues that the law of compensatory damages in conversion cases allows Plaintiff to recover attorneys fees and costs of the copyright suit and to recover damages for Plaintiff's emotional distress and injury to the Plaintiff's reputation for Defendant's alleged conversion. Finally, Plaintiff argues that attorney's fees are recoverable as an element of punitive damages.

## DISCUSSION

Despite Plaintiff's argument that this Court is precluded from considering the issues raised by Defendant because of rulings on Defendant's prior motions for summary judgment, this Court is not bound to prior rulings until final judgment is entered: "[w]hile the trial judges may choose to respect a prior ruling in a case, they are not required to do so." Ralkey v. Minnesota Mining & Mfg. Co., 63 Md.App. 515, 522-23 (1985).

Although Plaintiff objects, Defendant's careful arguments set forth in support of her Motion for Summary Judgment support renewed review of Defendant's contentions. There is no dispute that Plaintiff is only seeking recovery for four categories of damages: attorneys fees in relation to the previous copyright infringement suit, attorneys fees and costs related to this case, damages for emotional distress and injury to his reputation, and punitive damages. Reviewing Plaintiff's claims of damages leads this Court to conclude that Plaintiff's claim does not lie in conversion and that summary judgment is appropriate.

At common law, the rule on conversion was that it only applied to claims relating to tangible property. Allied v. Jasen, 354 Md. 547, 560 (1999). Plaintiff concedes that he does not

7



IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| WILLIAM C. BOND, | : |
| Plaintiff, | : |
| v. | : Case No. 260498-V |
| MIRIAM S. PESSIN, | : |
| Defendant. | : |

### ORDER

**UPON CONSIDERATION**, of Defendant's Motion for Summary Judgment, filed herein at docket entry #44, Plaintiff's Opposition thereto, filed herein at docket entry #59, and the arguments of both parties presented at a hearing held before this Court, pursuant to Maryland Rule 2-311(e), on November 1, 2006, it is hereby this 20 day of February, 2007, by the Circuit Court of Montgomery County, Maryland

**ORDERED**, that Defendant's Motion for Summary Judgment be and hereby is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court enter judgment in favor of Defendant, Miriam S. Pessin, as to the sole remaining count of conversion, which is Count II of Plaintiff's Complaint.

/s/ Eric M. Johnson
Eric M. Johnson
Judge, Sixth Judicial Circuit
Montgomery County, Maryland

**ERIC M. JOHNSON**
**JUDGE**

1

seek compensation for the loss of one physical copy of the manuscript. Instead, Plaintiff's claims for attorneys fees and costs related to the previous copyright infringement action, emotional distress and reputational damages, relate to the consequences of the dissemination of the words and ideas contained in that manuscript. The damages alleged by Plaintiff were actually caused by the alleged conversion of Plaintiff's *intellectual property rights*, a form of intangible property. The Allied Court has made it clear that the tort of conversion does not extend to most intangible property rights: "[w]e agree that the tort of conversion generally may extend to the type of intangible property rights that are merged or incorporated into a transferable document. We refuse, however, to extend the tort further, to cover completely intangible rights..." Id. at 562. Black's Law Dictionary, 7th ed. defines "intellectual property" as "[a] category of intangible rights protecting commercially valuable products of the human intellect." The property rights at issue in this case are not merged or incorporated into a transferable document. Plaintiff's attempt to use the tort of conversion to create a copyright infringement action, when none exists,[5] must fail as a matter of law.

Alternatively, this Court also finds that the Plaintiff's claim for conversion fails as each of Plaintiff's claimed categories of damages fail as a matter of law. Essentially, Plaintiff's claims for damages break down into two general categories. The underlying claims for compensatory damages in this action consist of Plaintiff's claim for attorneys fees and costs related to the copyright infringement action and Plaintiff's claims for emotional distress and reputational damages. Plaintiff's claim for punitive damages and Plaintiff's claims for attorneys

---

[5] *See* Bond v. Blum, 317 F.3d 385 (4th Cir. 2003)

8

fees and costs related to this suit[6] are collateral to his underlying claims for compensatory damages. We shall first discuss Plaintiff's underlying claims.

First, Plaintiff claims attorney's fees from a previous suit. Plaintiff may only recover attorney's fees and costs from litigation with others in certain situations: "where the wrongful acts of defendant have involved plaintiff in litigation with others, or placed him in such relations with others as made it necessary to incur expense to protect his interest, such costs and expense should be treated as legal consequences of the original act." McGaw v. Acker Merrall & Condit Co., 111 Md. 153 (1909). The United States Court of Appeals for the Fourth Circuit upheld the United States District Court for the District of Maryland's holding that Plaintiff's copyright infringement suit was frivolous. Bond v. Blum, 317 F.3d 385, 398 (4th Cir. 2003). As a matter of law, Miriam Pessin's alleged conversion could not have necessitated this "frivolous" copyright infringement action. As such, Plaintiff, not Defendant, should bear the cost of this unnecessary action.

Likewise, Plaintiff is not entitled to damages for emotional distress or injury to his reputation. Under Maryland law, Plaintiff must make some allegation of a physical injury as a prerequisite to recovery for emotion distress resulting from damage done to property. Dobbins v. Washington Suburban Sanitary Com'n, 338 Md. 341, 350 (1995).[7] Plaintiff has made no such claim. As such, these claims for damages are more appropriately classified as separate claims for defamation[8] and intentional infliction of emotional distress.[9] Even if these claims were

---

[6] In another case, attorney's fees and costs might be considered as underlying claims. However, Plaintiff has made no such claim in this action, even stating that the attorneys fees and costs are appropriate for consideration in an award of punitive damages.

[7] Although this case discusses property damage as a result of negligence, this Court finds that its reasoning applies equally persuasively to the case sub judice. Further, this Court notes that as Plaintiff's other alleged damages fail as a matter of law, there is no underlying damage of any other kind, physical or not. This is a second reason for treating this claim for damages as an improper allegation of intentional infliction of emotional distress.

[8] See Carter v. Aramark Sports and Entertainment Services, Inc., 153 Md.App. 210, 237-38 (2003) for a discussion of defamation.

9

colorable, which they are not, Plaintiff did not appropriate plead these causes of action under the Maryland Rules. *See* Maryland Rule 2-303(a).

Plaintiff's contingent claims must similarly fail. Plaintiff claims attorney's fees and costs related to this case are generally covered by the "American Rule," which "prohibits the prevailing party in a lawsuit from recovering his attorney's fees as an element of damages." St. Luke Evangelical Lutheran Church, Inc. v. Smith, 318 Md. 337, 344 (1990). The American rule is not absolute:

> Nevertheless, there are exceptions to the American Rule. For example, in Maryland, attorney's fees may be awarded when (1) parties to a contract have an agreement to that effect; (2) there is a statute which allows the imposition of such fees; or (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party.

Id. at 345-46. Internal citations removed. We have already discussed exception (3). Plaintiff has not presented any evidence of breach of contract. The only statute which is even possibly applicable to this situation is Maryland Rule 1-341, which states:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

As none of Plaintiff's underlying claims are meritorious, Defendant did not in bad faith by defending this suit, or filing any motion. As such, Plaintiff's claim for attorneys fees and costs must fail, as there is not basis in law for him to recover attorneys fees.

Plaintiff also claims that the amount of his Attorney's fees may support a claim of punitive damages. However, Plaintiff may not recover punitive damages without an underlying "actual loss." Maryland law is unequivocal that punitive damages cannot be recovered without

---

[9] *See* Harris v. Jones, 281 Md. 560 (1977) for the elements of intentional infliction of emotional distress.

proof of actual loss. Philip Morris Inc. v. Angeletti, 358 Md. 689, 773 (2000); Caldor, Inc. v. Bowden, 330 Md. 632, 662 (1993); Rite Aid Corp. v. Lake Shore Investors, 298 Md. 611, 626 (1984); Shabazz v. Bob Evans Farms, Inc., 163 Md.App. 602, 639 (2005), Carter v. Aramark Sports and Entertainment Services, Inc., 153 Md.App. 210, 253 (2003). As Plaintiff has no viable claims for actual loss, as discussed above, his entire claim for punitive damages, including any amounts awardable for attorneys fees and costs, fails as a matter of law.

As stated above, Plaintiff's sole remaining claim of conversion fails as a matter of law as Maryland law does not recognize a claim of conversion for intellectual property. Alternatively, each of Plaintiff's claims of damages also fail as a matter of law. There are no material facts in dispute in regards to any of these matters. Defendant is entitled to Judgment as a matter of law.

## CONCLUSION

Accordingly, for the reasons stated, Defendant's Motion for Summary Judgment is GRANTED. An order shall issue.

20 Febuary
Date

Eric M. Johnson
Judge, Sixth Judicial Circuit
Montgomery County, Maryland

11